[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 14, 2010
JOHN LEY
CLERK

_____

No. 09-15119

_____

D. C. Docket No. 08-61603-CV-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ONE 1990 BEECHCRAFT,
1900 C Twin Engine Turbo-Prop
Aircraft, Venezuelan Registration No.
YV219T, Serial UC118, et al.,

Defendants,

INTERNATIONAL AVIATION, LLC,

Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 14, 2010)

Before BARKETT and MARCUS, Circuit Judges, and HOOD,[*] District Judge.

BARKETT, Circuit Judge:

International Aviation, LLC appeals a district court decision ordering the forfeiture, under the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 981 et seq., of a Beechcraft airplane[1] to which it holds legal title. The United States and International Aviation stipulated that the aircraft carried cocaine from Venezuela into the United States. The plane was therefore "subject to forfeiture," 18 U.S.C. § 983(c)(1), because it was "used or [was] intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" a controlled substance, 21 U.S.C. § 881(a)(4).

International Aviation contested the forfeiture, claiming to be an "innocent owner,"[2] and that, consequently, its property could not be forfeited. 18 U.S.C. § 983(d)(1). After an evidentiary hearing, the district court found that International Aviation was not an "owner" of the aircraft, for the purposes of the statute, 18 U.S.C. § 983(d)(6), and therefore was not an innocent owner of

_____

[*] Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1] The plane is a 1990 Beechcraft 1900 C Twin Engine Turbo-Prop Aircraft, Venezuelan Registration No. YV219T, Serial UC118.

[2] CAFRA defines an "innocent owner" as, in relevant part, an "owner who did not know of the conduct giving rise to the forfeiture." 18 U.S.C. § 983(d)(2)(A)(i).

the plane.[3]  International Aviation appeals this determination.

## DISCUSSION

For a claimant to prove, under CAFRA, that its property should not be forfeited because it is an innocent owner, the claimant must establish, by a preponderance of the evidence, id. § 983(c), that it is both innocent, id. § 983(d)(2), and an owner, id. §§ 983(d)(3)-(6).  Statutory ownership requires, in applicable part, first, "an ownership interest in the specific property sought to be forfeited," id. § 983(d)(6)(A), and, second, that the claimant be more than "a nominee who exercises no dominion or control over the property," id. §983(d)(6)(B)(iii).

The district court recognized that International Aviation had legal title to the plane and thus held an ownership interest in the property, and the parties do not contest this point.  The issue before us is whether the district court erred in finding that International Aviation was a "nominee who exercise[d] no dominion or control."[4]  Id.  International Aviation argues that because it exercised some

---

[3] The district court cast its ruling in terms of "statutory standing," reasoning that because International Aviation was not the "owner" of the plane, it lacked "statutory standing" to raise the innocent owner defense at all.  "Although many cases refer to [the statutory definition of ownership] as part of the 'standing' inquiry, it is in fact an element of the innocent owner's claim on the merits," United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1014 (8th Cir. 2003), and we treat it as such throughout this opinion.

[4] In reviewing a district court's civil forfeiture determination, "we review [the court's] factual findings for clear error[] and [its] conclusions of law de novo."  United States v.

3

dominion and control over the plane, it is not a nominee. To hold otherwise, it reasons, would be to change the statute to require "substantial" dominion or control, when the plain language of the statute is clearly limited only to those claimants who exercise "no dominion or control." Id. (emphasis added).

The purpose of CAFRA is to "make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." United States v. Certain Real Property, Located at 317 Nick Fitchard Rd., N.W., 579 F.3d 1315, 1322 (11th Cir. 2009) (quoting H.R. Rep. No. 106-192 at 11 (1999) (other quotation and citation omitted)); see also Civil Asset Forfeiture Reform Act of 2000, An Act to provide a more just and uniform procedure for Federal civil forfeitures . . . ., Pub. L. No. 106-185 (2000) (emphasis added). In its Report, the House Judiciary Committee emphasized the need for a strong statutory innocent owner defense in the wake of a then-recent Supreme Court case, Bennis v. Michigan, 516 U.S. 442 (1996), which the Committee believed held that the Constitution did not provide such a defense. H.R. Rep. No. 106-192, at 9; see also id., at 8 (characterizing the need to "overcome tremendous procedural hurdles such as . . . having to prove their property was 'innocent'" as an abuse of civil forfeiture

---

$125,938.62, 537 F.3d 1287, 1293 (11th Cir. 2008).

4

the Judiciary Committee was "gravely concerned about").

To accomplish this goal, Congress took the extraordinary step of providing a right to counsel for indigent property owners, 18 U.S.C. § 983(b)(2)(A), raising the government's burden of proof from probable cause to a preponderance of the evidence, id. § 983(c)(1), and adding the strengthened innocent owner defense at issue in this case. Prior to CAFRA, federal forfeiture was a highly variable process: it was authorized under different statutes, for different circumstances; only some of those statutes contained innocent owner defenses, and even the innocent owner defenses that were available had different requirements, depending on the underlying statute. As part and parcel of this new, claimant-protective statutory regime, CAFRA's innocent owner defense, including, in part, the "no dominion or control" language at issue here, unified civil forfeiture law and ensured that a "meaningful" innocent owner defense would "uniform[ly]" apply. H.R. Rep. No. 106-192, at 14-15. It is the application of this language that is the issue in this case.

In assessing the meaning of the relevant provision at issue, we look to "[t]he first rule in statutory construction[, which] is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further

inquiry." United States v. Silva, 443 F.3d 795, 797-98 (11th Cir. 2006) (quotation and citation omitted); see also United States v. Fisher, 6 U.S. (2 Cranch) 358, 399 (1805) ("Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction."). The role of the judiciary is "construe what Congress has written. . . . Congress expresses its purpose by words[,] . . . [and i]t is for us to ascertain – neither to add nor subtract, neither to delete nor distort." 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States, 340 U.S. 593, 596 (1951).

Here, the plain language of the statute clearly provides that a claimant must be more than a "nominee who exercises no dominion or control," 18 U.S.C. § 983(d)(6)(B)(iii) (emphasis added). There is no ambiguity in the word or the phrase, and following the statute's plain language does not lead to an absurd result. There is therefore no reason to disregard the plain language of the statute. Silva, 443 F.3d at 798 ("[W]e should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result." (citation omitted)); id. ("If the statute's meaning is plain and unambiguous, there is no need for further inquiry." (citation and quotation omitted)) Indeed, the plain language is consistent with the purpose, structure, and context of CAFRA,

6

discussed above. See Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010) ("[W]e do not look at one word or term in isolation but rather look to the entire statute and its context." (citation omitted)). Thus, we conclude that exercising some dominion or control suffices to prove that a claimant is not a mere nominee. To hold otherwise would be to substitute our judgment for Congress's, thereby weakening the substantive protections Congress set out in the statute.

CAFRA did not, however, change the requirement that it must be the claimant who exercises that dominion or control. Although this identity requirement may seem obvious, it is of particular importance to forfeiture because "things are often not what they appear to be, especially in the world of drug trafficking. . . ." United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., 803 F.2d 625, 630 (11th Cir. 1986) (quotation and citation omitted). Indeed, the very premise of requiring both an ownership interest and dominion or control is that "people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name." Id. Requiring dominion or control ensures that claimants have at least some actual connection to the property in question; they cannot be only bare title holders.

International Aviation argues that it meets the statutory criteria because it exercised some dominion and control when it signed the aircraft's ownership

7

documents, held title to the aircraft, signed the aircraft's lease, reviewed the flight logs of the airplane, and supervised the repairs of the aircraft while it was leased. If it had indeed been <u>International Aviation</u> that had performed the afore-mentioned tasks, we would agree that the company exercised some dominion and control over the plane.

However, we can find no error in the district court's factual determination that the responsible party throughout was Juan Ynfante, owner and manager of SERAMI, the company to which International Aviation leased the plane.[5] Although Carlos Gonzales, Ynfante's son and International Aviation's sole employee, initially organized International Aviation, Ynfante became a 75% shareholder in the company and continued to hold 75% ownership of the company through the time of trial. The district court found that Ynfante or one of his companies exercised control over the aircraft at all times. It was Ynfante who negotiated for the aircraft's purchase, paid for the aircraft, controlled its maintenance and repair, acquired its insurance, and hired counsel to represent International Aviation in these proceedings.[6] No corporate meetings were ever held; no official voting ever occurred, nor did International Aviation ever file tax

---

[5] It was during SERAMI's tenure as lessee, while the plane was en route to the United States for repairs, that the cocaine was found. Gonzales was also a shareholder in SERAMI.

[6] Indeed, Ynfante did not even inform Gonzales of the plane's seizure when Ynfante learned of it. Gonzales found out, instead, through a friend.

returns. Although there was a lease between SERAMI and International Aviation permitting SERAMI to operate the plane, SERAMI's payments – when it made them – did not go to International Aviation but, rather, directly to International Aviation's creditors (including Gonzales, to pay his salary). On this record, we cannot say that the district court erred in drawing credibility determinations and inferences against International Aviation and in favor of the government and, on that basis, determining that International Aviation did not meet its burden of proving, by a preponderance of the evidence, that it, rather than Ynfante, exercised any dominion or control at all.

**AFFIRMED.**