In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3568

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FUNDS IN THE AMOUNT OF $574,840, *et al*,

*Defendants.*

STEPHEN UNSWORTH and RACHEL PILLSBURY,

*Claimants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 7803—**Milton I. Shadur**, *Judge*.

ARGUED APRIL 10, 2013—DECIDED JUNE 11, 2013

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. This is a companion case to *United States v. $196,969*, No. 12-3414, which like the present one concerns procedures in federal suits governed by 18 U.S.C. §§ 981 *et seq.* (a part of the Civil Asset Forfeiture Reform Act (2000)) and Supplemental

Rule G of the Federal Rules of Civil Procedure, relating to civil forfeiture of contraband, such as proceeds of crime, or other property connected to criminal activity.

The federal government filed the suit against five stashes of cash seized in searches of properties, including an apartment, vehicles, and storage units, possessed or occupied by Stephen Unsworth and his girlfriend Rachel Pillsbury. The government suspected that the two had been engaged in drug trafficking and that the cash was the proceeds of that activity. They were prosecuted not in a federal court, but in an Illinois state court, for the alleged trafficking. The prosecution collapsed after the court ruled that the evidence of drug trafficking had been procured by illegal searches and ordered the evidence suppressed.

The federal forfeiture proceeding was filed after the state prosecution had begun. The government notified Unsworth and Pillsbury of the proceeding, as Rule G requires. They submitted, as they were permitted to do by Rule G(5)(a)(i), claims, signed under penalty of perjury, "identify[ing] the specific property claimed" and "the claimant and stat[ing] the claimant's interest in the property." Cf. *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 664-66 (3d Cir. 2007). Each claim identified the claimant and the property and stated that the claimant had "an ownership and possessory interest" in all the property specified in the claim. Accompanying each claim was a motion to stay the forfeiture proceeding on the ground that allowing it to proceed would undermine the claimant's right not to incrim-

inate himself or herself in the pending state criminal proceeding. The statute provides that such a stay "shall" be granted "if the court determines that—(A) the claimant is the subject of a related criminal investigation or case; (B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and (C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case." 18 U.S.C. § 981(g)(2). That conditions (A) and (C) were satisfied is not contested, and the claims would seem to have satisfied (B), the standing condition, as well, by identifying the claimants and their property interests under penalty of perjury, though this is an issue to which we'll return.

Without explanation the district court denied the motion for a stay and instead gave the claimants two weeks in which to respond to nine special interrogatories that the government had propounded to them. Rule G(6)(a) authorizes the government to issue "special interrogatories limited to the claimant's identity and relationship to the defendant property." The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims. (That is another point to which we return later in this opinion.) The claimants objected to the interrogatories and flatly refused to answer several, including one that asked them to state the sources of the cash they claimed to own; if the cash was proceeds of sales of illegal drugs, the claimants had no rights in it. 21 U.S.C. § 881(a); *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 123-29 (1993).

The district judge, who early in the forfeiture proceeding had expressed concern over whether the claims were within the jurisdiction that Article III of the Constitution confers on federal courts, granted the government's motion to strike the claims on the ground that by failing to answer all the interrogatories the claimants had failed to "establish" Article III jurisdiction. 889 F. Supp. 2d 1098 (N.D. Ill. 2012). With no claims remaining after his order to strike, the judge entered judgment for the government, ordering forfeiture of all the property in question and precipitating this appeal.

The judge should have issued the stay pending the outcome of the state criminal proceeding (and maybe beyond, if the federal government is also contemplating prosecuting the claimants). The statute directed him to grant a stay if all three conditions were satisfied. And they were—he was mistaken, as we'll see, in believing that condition (B), relating to standing, had not been satisfied. Had he granted the stay, no special interrogatories would have been issued until it expired and so no issue regarding the claimants' refusal to answer some of the interrogatories would yet have arisen.

Instead of issuing the stay the judge issued a protective order forbidding the government without the judge's permission to disclose the answers to the interrogatories to persons other than federal government lawyers assigned to the forfeiture case. "[T]he court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of

the opposing party to pursue the civil case." 18 U.S.C. § 981(g)(3). It was because the claimants failed to answer some of the interrogatories to which they had objected, even after the judge issued the protective order, that the judge ordered the forfeiture.

The government had given no reason for wanting to pursue forfeiture before the state criminal case against the claimants was resolved, even though that resolution was likely to cast light on who had rights to the cash. The effect of the protective order was to allow the government to pursue discovery (via the interrogatories), but not the claimants to do so, because apart from the interrogatories discovery in the forfeiture case had not begun. Discovery ordinarily does not begin until a discovery conference is held. See Fed. R. Civ. P. 26(d)(1), (f). None was held in this case—and 18 U.S.C. § 981(g)(3) provides that "in no case . . . shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so." That may have been the effect of the judge's issuing the protective order before discovery (other than the issuance of the interrogatories) had begun. It is true that a claimant can ask for a discovery conference, or ask the district judge for permission to conduct discovery even if no conference has been held. Fed. R. Civ. P. 26(e)(1). But neither the district judge nor the government suggests that the claimants should have pursued either course; maybe the claimants through no fault of theirs were not yet ready to initiate discovery.

The judge's ground for striking the claims and having done so for ordering forfeiture was in any event not that the claimants wouldn't be prejudiced; it was that without answers to all the interrogatories he could not allay his concern that the claims might not satisfy the jurisdictional requirements imposed by Article III. That concern was misplaced, or at least premature, even if a claimant in a forfeiture proceeding is required to allege (and if the allegation is contested prove) that he has Article III standing, which we assume in this case though question (without attempting to resolve) in the companion case.

At the pleading stage Article III standing is something to be alleged, not proved. All that must be alleged is an injury, personal to the person seeking judicial relief, that the court can redress, an injury such as the injury inflicted by the government when it has got hold of money that belongs to the person and refuses to return it. This is constitutional law 101. Rule G(5) requires more, but the more is an addition to what is required to plead Article III standing.

Generally when a pleading alleges facts that if true confer Article III standing, the court's focus should move immediately to the merits. For if the court merely determines, on the basis of an evidentiary hearing concerning standing, that there is no standing, it cannot make a merits determination and so its dismissal of the claim will have no res judicata effect. *In re African-American Slave Descendants Litigation*, 471 F.3d 754, 758 (7th Cir. 2006); *Frederiksen v. City of Lockport*, 384 F.3d 437, 438-

39 (7th Cir. 2004); *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). Granted, this is in general, not in every case. Sometimes a factual dispute over an Article III requirement has nothing to do with the merits—for example a dispute over whether the parties are of diverse citizenship in a case in which diversity is the asserted basis for federal jurisdiction. A claim may be valid, but if it is brought in the wrong court that court has no authority to determine its validity; the case is therefore dismissed without prejudice and so can be refiled in a different court. *Okoro v. Bohman*, 164 F.3d 1059, 1062-63 (7th Cir. 1999).

And there are at least two situations in which even though the standing issue merges with the merits, a ruling rejecting standing has res judicata effect. One, discussed most recently in *El v. AmeriCredit Financial Services, Inc.*, 710 F.3d 748, 751, 754 (7th Cir. 2013), is where the suit either is frivolous (and so does not engage the jurisdiction of the court) or is intended to harass, and in either case the court by dismissing with prejudice can preclude burdening itself or another court with a future suit that simply should not be brought.

The second situation, germane to the present case, is where the ruling on standing (or on some other jurisdictional prerequisite), because it has a preclusive effect with respect to the facts determined by that ruling, *Hill v. Potter*, 352 F.3d 1142, 1146-47 (7th Cir. 2003), prevents a further attempt by the plaintiff to obtain relief. A determination after an evidentiary hearing that the plaintiff

in a conversion suit (the claims in this case are essentially conversion claims) has no interest in the property that he alleges was converted will bar his filing his claim in some other form or forum. But if for example the only factual determination is that the plaintiff lacked a fee simple interest in the property that he wants returned to him, he may be able to refile the claim, alleging a possessory interest. For "a judgment on the merits precludes relitigation of any ground within the compass of the suit, while a jurisdictional dismissal precludes only the relitigation of the ground of that dismissal." *Okoro v. Bohman*, *supra*, 164 F.3d at 1063. So even in a case such as the present one, once facts bearing on the claim are presented the prudent course for the district court is to proceed to the claim's merits.

But there is an exception. Supplemental Rule G(8)(c)(ii)(B) authorizes the government to move to strike a claim on the ground that the claimant "can[not] carry the burden of establishing standing by a preponderance of the evidence." It is always open to a party to contest standing by proving facts that contradict his opponent's allegations of standing. Suppose the government wanted to show that although the money it's holding may belong to the claimants, they don't want it back because they don't consider fiat money to be legal tender; they want the money burned. Then they wouldn't have standing, because a judgment in their favor would not provide them with any lawful redress. (It is unlawful to burn U.S. currency. 18 U.S.C. § 333.)

But there is more to Rule G(8)(c) than this. A forfeiture suit is in rem. The defendant is not a person, or a firm or a government agency or some other type of organization, but a thing, in this case a pile of cash. It's all too easy for someone who has no colorable claim to property in government hands to file a claim in the forfeiture proceeding. Such claims, by people trolling the Internet for forfeiture notices, could bog down forfeiture proceedings. See Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 9.3, pp. 375-76 (2013). Rule G provides an escape hatch for the government by allowing it to respond to the claim with a motion to strike that "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Rule G(8)(c)(ii)(B). If the claimant successfully demonstrates that he has an interest, this is not the end of the case, because the government can sometimes obtain forfeiture of the property anyway—for example, forfeiture of a building owned by the claimant but used for illegal gambling, as in *United States v. On Leong Chinese Merchants Ass'n Building*, 918 F.2d 1289, 1290 (7th Cir. 1990). The motion to strike if successful enables a fraudulent claim to be dismissed at the threshold.

The rule's use of the term "standing" is unfortunate because striking a claim is a decision on the merits. It is not a determination that the claimant has failed to show that the court has jurisdiction and so he should seek relief by an alternative path; it is a determination

that he has no interest in the property. That determination was not made in this case. It's not as if the claimants were claiming property obviously not theirs—claiming for example ownership of a painting that had been stolen from the National Gallery in Washington (and thus was owned by the federal government) and had been recovered from the thief and the government was seeking forfeiture of it.

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); see *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005); *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508-09 (5th Cir. 2008). The government can move to strike a claim to property on the ground that the claimant has no interest in it, but it cannot just say to him: prove it's your property. Remember that the claim that Rule G(5)(a)(i) requires of a claimant is not just a naked statement "I want the dough." It must be signed under penalty of perjury and identify the claimant and the nature of his interest. It is evidence, *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638-40 (9th Cir. 2012); cf. *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1275 (10th Cir. 2008), and shifts to the government at least the burden of production of evidence that the claim is invalid—as the government appears to have recognized. For it was the absence of evidence countering the claims in this case when they were filed that motivated the serving of special interrogatories on the claimants; the government needed

discovery in order to determine whether the claimants had valid claims.

Some cases have required the claimant to provide more evidence than Rule G(5)(a)(i) requires. See Cassella, *supra*, § 9.3, pp. 381-86; but see *United States v. $148,840.00 in U.S. Currency*, *supra*, 521 F.3d at 1276. The cases don't explain where such a requirement comes from, and we've expressed skepticism in the companion case that the requirement is proper. We needn't try to wrestle the issue to the ground. The government jumped the gun. It gave no reason for opposing a stay that would defer the litigation of its forfeiture case until the criminal prosecution of the claimants was resolved. For reasons of judicial economy the stay is preferable to immediate discovery the fruits of which are hidden from the criminal proceeding by a protective order. And remember that section 981(g)(3) *forbids* the protective-order substitute for a stay when the effect is to hamstring one of the parties, as by preventing him from conducting discovery while the other party is using discovery to make its case against him—as may have happened here.

The judgment of forfeiture must be reversed and the case remanded for further proceedings concerning the claimants' interest and, possibly depending on the resolution of that issue, the ultimate issue of forfeiture. Circuit Rule 36 shall apply on remand.

REVERSED AND REMANDED.