RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent. The majority’s misinterpretation of the rules applicable to forfeiture actions conflicts with our precedent and the decisions of nearly every other court to consider the issue we decide.
The rules governing civil forfeiture actions operate in a unique manner in discerning a claimant’s standing. In particular, the rules establish a special role for discovery in determining whether a claimant has standing to challenge a forfeiture action. At issue in this case is the application of Rule G of the Supplemental Rules of the Federal Rules of Civil Procedure for Admiralty or Maritime Claims and Asset Forfeiture Actions (Rule G).
Rule G(8)(c)(i) provides:
(i) At any time before trial, the government may move to strike a claim or answer: (A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing.
*980 . Rule G(8)(c)(i) is not complex in its application. It expressly provides that “[a]t any time before trial,” the government may file a motion to strike a claim because the claimant failed to comply with Rule G(5) or (6) or because the claimant otherwise “lacks standing.” Id. Rule G(6) is equally straightforward regarding the government’s utilization of special interrogatories in determining the claimant’s standing:
The government may serve special interrogatories limited to the claimant’s identity and relationship to the defendant property without the court’s leave at any time after the claim is filed and before discovery is closed. But if the claimant serves a motion to dismiss the action, the government must serve the interrogatories within 21 days after the motion is served.
Rule G(6)(a). It is readily apparent from the language of Rule G(6)(a) concerning the scope of the special interrogatories that the claimant’s standing is implicated in any responses. It is for that very -reason that the special interrogatories are “limited to the claimant’s identity and relationship to the defendant property ...” Id. Consistent with the near unanimous interpretation of Rule G(6)(a), we have articulated that:
Unlike in typical civil proceedings, the government may commence limited discovery immediately after a verified claim is filed. Supplemental Rule G(6)(a) provides that the government may serve special interrogatories limited to the claimant’s identity and relationship to the defendant property without the court’s leave at any time after the claim is filed and before discovery is closed. The purpose of the rule is to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant’s standing....
United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 635 (9th Cir.2012) (citation, alteration, footnote reference, and internal quotation marks omitted) (emphasis added). “At any time before trial, the government may move to strike the claimant’s claim or answer on the basis that the claim or answer does not comply with Supplemental Rule G(5), that the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a), or that the claimant lacks standing....” Id. (citation and footnote reference omitted) (emphasis added).
“The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant’s identity and relationship to the defendant property and to gather information that bears on the claimant’s standing!.]” Id. at 642 (citations and internal quotation marks omitted). Indeed, “the text of Rule G(6)(a) itself ... broadly allows the government to collect information regarding the claimant’s relationship to the defendant property....” Id. (internal quotation marks omitted). Despite such clarity, the majority strays from our precedent and that of nearly every other court in holding that the district court erred in striking Pickle’s claim because he failed to answer the special interrogatories relevant to his standing.
Although this appeal is governed by an abuse of discretion standard of review,[1] see *981 United States v. $154,853.00 in U.S. Currency, 744 F.3d 559, 562 (8th Cir.2014), the majority curiously faults the district court for applying the express language of Rules G(6) and G(8) in accordance with existing precedent. “A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment....” United States v. Coeur d’Alenes Co., 767 F.3d 873, 879 (9th Cir.2014) (citation, alteration, and internal quotation marks omitted). The district court committed none of these infractions.
It is telling that the majority recognizes that:
the Advisory Committee Note to Rule G(8)(c)(i)(A) emphasizes the special role of Rule G(6) in determining claim standing, and courts including this one have held that the purpose of Rule G(6) special interrogatories is to gather information that bears on the claimant’s standing.
Majority Opinion, p. 976 (internal quotation marks omitted). The majority also candidly acknowledges that “courts frequently refer to compliance with Rule G as a statutory standing requirement under CAFRA” and that the statements in the advisory committee note and court cases “undoubtedly fuel a perception that a claimant’s Rule G(6) compliance is a sine qua non to establish his standing ...” Id. Once the majority recognized that the district court’s decision comported with Rule G, its Advisory Committee Note,[2] our precedent, and the precedent of other courts, an affirmance of the district court’s decision should have followed. The majority nevertheless concludes that the district court erred in striking Pickle’s claim because his failure to respond to the special interrogatories as required by Rule G(6) was ostensibly irrelevant to Pickle’s standing. See id. at 975-76.
I disagree. I would hold that the district court acted within its discretion in striking Pickle’s claim on a basis that is unquestionably recognized by our precedent, numerous rulings from other courts, the language of Rule G, and the Advisory Committee Note. See $133,420.00, 672 F.3d at 642 (“The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant’s identity and relationship to the defendant property and to gather information that bears on the claimant’s standing!.]”) (citations and internal quotation marks omitted); see also $154,853.00, 744 F.3d at 563 (observing that the purpose of Rule G(6)(a) “is to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant’s standing”) (citing $133,420) (in *982 ternal quotation marks omitted); United States v. $25,982.28 in U.S. Currency, No. 5:14 CV 150, 2015 WL 410590, at *2 (N.D.Ohio Jan. 29, 2015) (“While it is claimant’s burden to establish standing, Rule G(6) entitles the government to serve special interrogatories to determine whether the claimant has a sufficient interest in the seized property to contest the forfeiture, that is, whether the claimant has standing....”) (citations and footnote reference omitted); United States v. Vehicle 2007 Mack 600 Dump Truck, 680 F.Supp.2d 816, 822 (E.D.Mich.2010) (noting that “[statutory standing is established through strict compliance with Supplemental Rules G(5) and G(6)”) (citation omitted) (emphasis added); United States v. $104,250.00 in U.S. Currency, 947 F.Supp.2d 560, 565 (D.Md.2013) (“To facilitate the Government’s ability to challenge claims on standing grounds, Rule G(6) permits the Government to serve the Claimant with special interrogatories that focus on the Claimant’s identity and her interest in the defendant property. Indeed, the importance of the standing issue and of the role of the special interrogatories is underscored by Rules G(6)(c) and G(8)(c)(ii)(A) which provide that the claimant must respond to the special interrogatories, and [the] court must determine whether the claimant has standing to contest the forfeiture, before [the] court addresses any other issue that the claimant may raise.”) (citations and internal quotation marks omitted); United States v. Eleven (11) New Utility Vehicles, No. 13-1776(GAG), 2014 WL 4385734, at *2 (D.P.R. Sept. 4, 2014) (“To establish statutory standing to contest a forfeiture action, a claimant must file a claim that complies with Supplemental Rules G(5) and G(6). A court may strike the claim of any claimant who fails to follow the Supplemental Rules’ procedural dictates.”) (citations omitted); United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 664 F.Supp.2d 97, 101 (D.D.C.2009) (“Because the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently, a court is authorized to strike the claim and/or answer of any claimant who fails to follow the Rules’ procedural dictates. Courts generally expect claimants to adhere strictly to those requirements ....”) (citations omitted) (emphasis added). The majority’s unsupported deviation from this overwhelming weight of authority transforms the straightforward application of an unambiguous rule into an immeasurably confusing venture.
The majority cites not a single persuasive decision reversing a district court’s striking of a claim based on the claimant’s obdurate refusal to comply with Rule G(6). Rather, the majority relies on the Seventh Circuit’s approach in United States v. Funds in the Amount of $574,840, 719 F.3d 648, 653 (7th Cir.2013). See Majority Opinion, p. 976. However, the Seventh Circuit’s decision is not helpful, because the court never considered the role of Rule G(6) in striking a forfeiture claim.
In $574,840, the claimants sought a stay of the forfeiture proceedings based on their ongoing criminal proceedings. See 719 F.3d at 650. After denying the motion to stay, the district court ordered the claimants to respond to the government’s special interrogatories, including an interrogatory asking the claimants “to state the sources of the cash they claimed to own ...” Id. The district court granted the government’s motion to strike and held that it lacked Article III jurisdiction because the claimants refused to respond to the interrogatories. See id. The Seventh Circuit determined that the district court erred because “[a]t the pleading stage Article III standing is something to be al *983 leged, not proved,” and the Rule G(5)[3] requirement was in addition to the pleading necessary to establish Article III standing. Id. at 651. The Seventh Circuit concluded that “[t]he government jumped the gun. It gave no reason for opposing a stay that would defer the litigation of its forfeiture case until the criminal prosecution of the claimants was resolved....” Id. at 653-54. In this context, the Seventh Circuit observed that Rule G(8)’s “use of the term standing is unfortunate because striking a claim is a decision on the merits. It is not a determination that the claimant has failed to show that the court has jurisdiction and so he should seek relief by an alternative path; it is a determination that he has no interest in ... .property....” Id. at 653 (internal quotation marks omitted). Thus, the Seventh Circuit never espoused any rule applicable to this appeal. Rather, the Seventh Circuit was applying Rule G(8)(c)(i)(B), which “provides an escape hatch for the government by allowing it to respond to the claim with a motion to strike” because the claimant lacks standing. Id.; see also Rule G(8)(c)(i)(B).[4] The Seventh Circuit did not consider a motion to strike premised on Rule G(8)(c)(i)(A)— the provision at issue in this appeal— based on a claimant’s failure to comply with Rule G(6).[5]
Notably, in the companion case to $574,840, the Seventh Circuit emphasized that the government could rely on the claimant’s failure to comply with Rule G(6) in seeking dismissal of a forfeiture claim. See United States v. $196,969.00 U.S. Currency, 719 F.3d 644, 647 (7th Cir.2013). The government sought to strike a forfeiture claim because the claimant failed to “spell out his interest in the property at the outset ...” Id. In rejecting this assertion, the Seventh Circuit opined:
[W]e are given no grounds for thinking that a claimant’s failure to particularize the nature of his claimed interest beyond what Rule G(5) requires burdens the government or the courts unduly. The government can depose the claimant or serve an interrogatory on him without leave of court, as expressly authorized by Rule G(6)(a). If the claimant is unresponsive, the government can move for dismissal of the claim and for entry of a judgment of forfeiture....
Id. (emphasis added). Indeed, the Seventh Circuit’s rationale is in lockstep with our precedent. See $133,420, 672 F.3d at 635 (“At any time before trial, the government may move to strike the claimant’s claim or answer on the grounds that ... the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a) ...”).
The Eighth Circuit’s decision in $154,853.00 is equally unhelpful to the majority. In that case, the claimant filed an *984 amended verified claim in which he asserted that $4,500 in seized money was earned though his employment. See 744 F.3d at 562. During oral argument, the government conceded that the claimant had statutory standing with respect to the claimed funds. See id. at 564. The Eighth Circuit concluded that the district court abused its discretion in striking the claim because “[i]f [the claimant] had already established standing as to the $4,500, as the government concedes, then special interrogatories were unnecessary to determine his standing as to that currency....” Id. Thus, the district court abused its discretion in striking a claim for failure to answer special interrogatories that were wholly unnecessary. In this case, far from conceding standing, the government explicitly and emphatically argued that Pickle did not satisfy the requirements for statutory standing, emphasizing that Pickle’s “out-right refusals to respond to Rule G(6) special interrogatories frustrate any examination into whether he is a straw owner, nominee, or received the property via a fraudulent transfer.” Clearly, the Eighth Circuit’s decision addressed markedly different facts.
The majority’s equating of Pickle’s refusal to answer the special interrogatories to a discovery issue is discordant. See Majority Opinion, p. 975 (criticizing the district court for “viewing] the Rule G(6) deficiency as something more substantial than a discovery issue.... ”). However, the district court is in good company. A panel of this court has also characterized the interrogatory process in forfeiture proceedings as “unlike ... typical civil proceedings.” $133,420, 672 F.3d at 635. Rather than raising a run-of-the-mill discovery issue, a claimant’s adherence to Rule G(6)(a) goes to the heart of the claimant’s assertion that he has standing to challenge the forfeiture action. See id. (“The purpose of the rule is to permit the government to file limited interrogatories at any time after the claim is filed to gather information- that bears on the claimant’s standing... .’’) (citation and internal quotation marks omitted); see also id. at 642 (“The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant’s identity and relationship to the defendant property and to gather information that bears on the claimant’s standing!.]”) (citations and internal quotation marks omitted); $574,840, 719 F.3d at 650 (stating that “[t]he purpose of such interrogatories is to smoke out fraudulent claims — claims by persons who have no colorable claims”); $196,969.00, 719 F.3d at 647 (“The government can depose the claimant or serve an interrogatory on him without leave of court, as expressly authorized by Rule G(6)(a). If the claimant is unresponsive, the government can move for dismissal of the claim and for entry of a judgment of forfeiture.... ”).
The majority reasons that “the structure of Rule G(8) — which contains two distinct subparts, each authorizing specifically defined substantive bases on which the government may move to strike — counsels against the interpretation that a claimant’s failure to abide by Rule G(6) necessarily amounts to a standing defect....” Majority Opinion, p. 976. However, this reading of Rule G(8) directly conflicts with our precedent and with a plain reading of the rule. Rule G(8)(c) provides that:
(i) At any time before trial, the government may move to strike a claim or answer: (A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing.
These subparts are not substantively distinct. Rather, the subparts relate to potential defects in the claimant’s standing that may arise during different phases of *985 the forfeiture action. Although a claimant, unlike Pickle, may have fully answered the special interrogatories pursuant to Rule G(6), the claimant may nonetheless lack standing at some “time before trial,” such as during the summary judgment stage. See id.; see also $133,420.00, 672 F.3d at 638 (concluding that “a claimant’s bare assertion of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary judgment”).
In any event, Rule G(8) unequivocally provides that the government may move to strike a claim due to the claimant’s failure to comport with the requirements of Rule G(6). See Rule G(8)(c)(i)(A). By holding that Pickle could continue to contest the forfeiture despite his non-compliance with the mandates contained in Rule G(6), the majority renders meaningless this clearly bestowed option to move to strike a claim. See Majority Opinion, pp. 977-78; cf. $133,420.00, 672 F.3d at 635 (“At any time before trial, the government may move to strike the claimant’s claim or answer on the grounds that the claim or answer does not comply with Supplemental Rule G(5), that the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a), or that the claimant lacks standing....”) (citation and footnote 'reference omitted) (emphasis added). Although the majority appears nonplussed by use of the term “standing” in Rule G(8)(c)(i)(B), we have nonetheless articulated that “the purpose of [Rule G(6)(a) ] is to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant’s standing....” $133,420.00 at 635 (citation and internal quotation marks omitted) (emphasis added). “The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the. government the right to question the claimant regarding the claimant’s identity and relationship to the defendant property and to gather information that bears on the' claimant’s standing[.]” Id. at 642 (citations and internal quotation marks omitted). The majority’s relegation of Rule G(6)(a) to a mere discovery request unrelated to the claimant’s standing directly conflicts with our precedent and creates an unwarranted split with every court that has recognized the relevance of the rule to the determination of a claimant’s standing, and the government’s right to use the rule to subject a claim to adversarial testing.
The majority also maintains that the district court erred because “the claimant’s genuine ownership of the property was not legitimately in dispute.... ” Majority Opinion, p. 976. It is unclear how the majority reaches such a conclusion given Pickle’s refusal to respond to the special interrogatories, including the most basic questions concerning his relationship to the property, and the government’s continuing challenge to his status. Pickle’s bare assertion in his verified claim that he “has an innocent possessory and/or ownership in [the] property” is not dispositive. Rather, the entire point of the Rule G(6) special interrogatories is to probe the claimant’s property interest as asserted in his claim. See $574,840, 719 F.3d at 653-54 (observing that “[i]t’s all too easy for someone who has no colorable claim to property in government hands to file a claim in the forfeiture proceeding.... Rule G provides an escape hatch for the government by allowing it to respond to the claim with a motion to strike ... ”). After all, there would be no point in providing for special interrogatories if the claimant could simply assert that he is a record owner in lieu of complying with Rule G(6). See $133,420.00, 672 F.3d at 642 (“The issue of standing is subject to adversarial testing under Supplemental *986 Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant’s identity and relationship to the defendant property, and to gather information that bears on the claimant’s standing[.]”) (citations and internal quotation marks omitted) (emphasis added). The majority deprives the government of the adversarial testing to which it is entitled and simply takes Pickle at his conclu-sory word.
Tellingly, forfeiture claims framed in terms of “and/or” property interests have met with skepticism in our circuit. For instance, in $133,420.00, we cautioned that:
Although [the claimant’s] verified claim was admissible evidence, its statement that [the claimant] had an ownership and/or a possessory interest in the defendant property is not sufficient to establish his standing. As we have explained, the claimant must make clear whether he is asserting a possessory interest, an ownership interest, or something else. Because [his] claim used and/or, it was not sufficiently specific regarding the nature of [his] claimed interest in the property. More important, the term and/or left open the possibility that [the claimant] was claiming only a possessory interest ... and an unexplained possessory interest is insufficient to establish standing at any stage of a forfeiture proceeding....
672 F.3d at 640 (citations and internal quotation marks omitted). The majority, therefore, assumes too much when it concludes that there was no legitimate dispute concerning Pickle’s “genuine ownership of the property” despite Pickle’s refusal to answer the special interrogatories. Majority Opinion, p. 976.[6]
Additionally, the majority’s conclusion that special interrogatories were unnecessary because Pickle’s bare assertion that he was a record owner automatically conferred standing is unsubstantiated. See Majority Opinion, pp. 976-77. In his motion for stay, Pickle asserted that he was “[t]he recorded owner” of the property. The government nonetheless sought special interrogatories to determine if Pickle was “a straw owner, nominee, or received the property via a fraudulent transfer....” The government’s efforts to discern Pickle’s precise property interest were entirely warranted. “Possession of mere legal title by one who does not exercise dominion and control over the proper *987 ty is insufficient even to establish standing to challenge a forfeiture.” United States v. Vacant Land, 15 F.3d 128, 130 (9th Cir.1994), as amended (citations and alteration omitted). Such forfeiture cases may “turn on a finding that the title holder is a strawman holding nominal title as a subterfuge for a drug trafficker, rather than being a true owner of an interest in the property....” Id. Under the majority’s approach, Rule G(6)(a) becomes meaningless as long as a claimant refuses to answer the special interrogatories and summarily declares that he is a record owner. Affording a claimant such an unwarranted escape from the strictures of Rule G(6)(a) is contrary to the rule’s purpose of permitting the government to test a claimant’s assertion of a property interest through special interrogatories. See $133,420.00; 672 F.3d at 634, 642.
Contrary to the majority’s approach, we have emphasized the importance of compliance with Rule G(6) even in cases where the claimant has asserted his Fifth Amendment rights. In $133,420.00, we observed that the claimant’s assertion of his Fifth Amendment privilege against self-incrimination was an attempt to thwart the adversarial testing contemplated by Rule G(6)(a). We concluded that the claimant’s reliance on the Fifth Amendment to avoid answering the special interrogatories “frustrated] the government’s attempts to test the veracity of his claim of ownership” and that “his claim of privilege ... raises the core concern that his testimony may furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition.” 672 F.3d at 642.
The majority’s approach, therefore, is in clear conflict with , our precedent establishing that Rule G(6)(a) implicates the claimant’s standing and the government has a right to file a motion to strike a claim when the claimant does not respond to the special interrogatories. See id. (“The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant’s identity and relationship to the defendant property, and to gather information that bears on the claimant’s standing[.]”) (citations and internal quotation marks omitted); see also id. at 635 (“At any time before trial, the government may move to strike the claimant’s claim or answer on the grounds that the claim or answer does not comply with Supplemental Rule G(5), that the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a), or that the claimant... .standing....”) (citation and footnote reference omitted) (emphasis added).
Relying on United States v. One Lincoln Navigator 1998, 328 F.3d 1011 (8th Cir.2003) and United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft, 619 F.3d 1275, 1277 n. 3 (11th Cir.2010), the majority attempts to justify its deviation from our binding precedent by suggesting that standing and the merits of the forfeiture action are blurred when the claimant asserts an innocent owner defense. See Majority Opinion, pp. 976-77. “An innocent owner is an owner who (i) did not know of the conduct giving rise to forfeiture’; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property....” United States v. Ferro, 681 F.3d 1105, 1113 (9th Cir.2012) (citation and internal quotation marks omitted). The majority’s innocent owner suggestion is immeasurably confusing given that Pickle asserted that a stay was warranted due to pending accusations of “possessing marijuana for sale, cultivation of marijuana, and other violations of [California law] pertaining to marijuana.” *988 Pickle also affirmed that he was “subject to a parallel criminal investigation” and that he declined to respond to the government’s interrogatories based on his Fifth Amendment rights.[7]
In any event, One Lincoln Navigator 1998 and One 1990 Beechcraft did not involve the claimant’s lack of statutory standing premised on the claimant’s failure to comply with Rule G(6)(a). Rather, those cases involved an assertion of an innocent owner defense pursuant to 18 U.S.C. § 983(d)(1)[8] and have no relevance to this appeal involving Pickle’s refusal to provide any support for his asserted property interest in response to the government’s special interrogatories. See One Lincoln Navigator 1998, 328 F.3d at 1014; see also One 1990 Beechcraft, 619 F.3d at 1277 n. 3 (clarifying that “[although many cases refer to the statutory definition of ownership as part of the standing inquiry, it is in fact an element of the innocent owner’s claim on the merits”) (citation, alteration, and internal quotation marks omitted). In contrast to Pickle’s blanket refusal to comply with Rule G(6) and provide support for his assertion of a property interest, the claimants in One Lincoln Navigator 1998 and One 1990 Beechcraft provided evidence during evidentiary hearings in support of their claims. See One Lincoln Navigator 1998, 328 F.3d at 1012-13; One 1990 Beechcraft, 619 F.3d at 1276-77. The majority’s parsing of inapposite innocent owner cases does not support reversal of the district court’s striking of Pickle’s claim, particularly in light of our contrary precedent. See $133,420.00, 672 F.3d at 634, 642.
Based on its assertion that courts “typically” afford claimants an opportunity “to cure defective Rule G(6) responses,” the majority faults the district court for not providing Pickle a similar opportunity. Majority Opinion, p. 973. However, the record belies any credible claim that an opportunity to cure was appropriate. This action did not involve a claimant’s defective responses to the special interrogatories, but a complete refusal to abide by Rule G(6). In this protracted action, which commenced in 2009, the district court granted numerous stays based on pending criminal proceedings against Pickle’s relatives. Once it became apparent that Pickle was not the subject of any criminal prosecution,[9] the district court ordered that discovery be completed by February 16, 2012, and the parties proposed a September 10, 2012, trial date. Although it was evident that Pickle was not subject to any criminal proceedings, Pickle nevertheless refused to answer the special interrogatories and responded with another motion to stay based on a purported criminal prosecution that never materialized.[10] Pickle refused to respond to any of the *989 government’s interrogatories, requests for admission, or requests for production, informed the government that he was asserting his Fifth Amendment rights, refused to attend his scheduled deposition, and filed an untimely opposition to the government’s motion to strike. Pickle’s refusal to respond to the special interrogatories based on his specious assertion of an ongoing criminal investigation is entirely distinguishable from the cases cited by the majority. Considering Pickle’s conduct, the district court was not compelled to afford Pickle any additional opportunities to satisfy his obligations under Rule G(6).
The majority’s holding that the district court erred in striking Pickle’s claim because Pickle’s failure to comply with Rule G(6) did not implicate his standing is legally untenable and conflicts with our precedent, as well as that of nearly every other court considering Rule G(6). The district court did not abuse its discretion in striking Pickle’s claim because he refused to respond to the government’s special interrogatories as required by Rule G(6). Once Pickle’s claim was stricken, Pickle no longer possessed any standing to contest the forfeiture. See 18 U.S.C. § 981(g)(2)(B) (providing that, for a stay, the claimant must have “standing to assert a claim in the civil forfeiture proceeding”). Thus, the district court’s denial of Pickle’s motion to stay due to lack of standing was entirely proper. I respectfully dissent from the majority’s contrary holding.

. If we were independently reviewing whether Pickle had standing to challenge the forfeiture action, our review would be de novo. See United States v. Real Property Located at 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir.2008). However, in this appeal, we review the district court’s grant of the motion to strike Pickle's claim for an abuse of discre *981 tion. See $133,420.00, 672 F.3d at 637. In any event, based on the weight of authority establishing that Rule G(6)(a) relates to standing and that a claim may be stricken based on the claimant's failure to comport with the rule's requirements, the outcome would be the same under de novo review.

. The Advisory Committee Note for Rule G(6) provides:
It remains useful ... to permit the government to file limited interrogatories at any time after a claim is filed to gather information that bears on the claimant’s standing. Subdivisions (8)(b) and (c) allow a claimant to move to dismiss only if the claimant has standing, and recognize the government's right to move to dismiss a claim for lack of standing. Subdivision (6) interrogatories are integrated with these provisions in that the interrogatories are limited to the claimant’s identity and relationship to the defendant property....
Supp. R. G advisory committee note (subdivision (6)).

. Pursuant to Rule G(5):
A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must: (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney ...

. Significantly, Rule G(8)(c)(i)(A) does not use the term "standing” and the Seventh Circuit never rejected longstanding precedent holding that compliance with Rule G(6) is necessary to establish statutory standing. Interpreting the court’s silence on this point as negating the need to adhere to the requirements of Rule G(6) is unprecedented.

.As the majority acknowledges, “[t]he government’s motion did not assert that Pickle had failed to comply with Rule G(5), nor did it claim that Pickle lacked Article III standing. ...” Majority Opinion, p. 974.

. The majority’s approach appears to intermingle the requirements for Article III standing and those of statutory standing in forfeiture actions. See, e.g., Majority Opinion, pp. 976-77. "In order to meet the case-or-controversy requirement of Article III, a plaintiff (including a civil forfeiture claimant) must establish the three elements of standing, namely, that the plaintiff suffered an injury in fact, that there is a causal connection between the injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision." $133,420.00, 672 F.3d at 637 (citations omitted). "Claimants in civil forfeiture actions can satisfy this test by showing that they have a colorable interest in the property, which includes an ownership interest or a possessory interest[.]” Id. (citations and internal quotation marks omitted). “At the motion to dismiss stage, a claimant’s unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing.” Id. at 638 (citations omitted) (emphasis added). “If the claimant instead asserts a possessory interest at the motion to dismiss stage, the claimant must offer some factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant’s control of the property....” Id. (citation and internal quotation marks omitted). In contrast, a claimant’s statutory standing is independently subject to the claimant's compliance with Rule G(6). See id. at 634; see also Vehicle 2007 Mack 600 Dump Truck, 680 F.Supp.2d at 822 (observing that "[s]tatutory standing is established through strict compliance with Supplemental Rules G(5) and G(6)”) (citation omitted).

. In his verified claim, Pickle maintained that he had "an innocent possessory and/or ownership in [the] property." In his motion for a stay, he asserted only that he was “[t]he recorded owner” of the property.

. Pursuant to 18 U.S.C. § 983(d)(1), "[a]n innocent owner’s interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence."

. Pickle was unable to demonstrate that he was "the subject of a related criminal investigation or case” or that his Fifth Amendment rights were implicated, because the criminal investigation into his activities had been closed. 18 U.S.C. § 981(g)(2)(A) & (C).

.Pickle’s motion to stay filed in 2011 was premised on a 2008 police report stating that a case against Pickle would be forwarded to the Trinity County District Attorney’s Office. However, that report also confirmed that ”[n]o charges were filed against Byron Pickle and the case against him was closed on August 14, 2009."