**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

REAL PROPERTY LOCATED AT 17
COON CREEK ROAD, HAWKINS BAR
CALIFORNIA, TRINITY COUNTY,
APN: 008-760-12, INCLUDING ALL
APPURTANCES AND IMPROVEMENTS
THERETO,
*Defendant*,

and

LEUNG CHINN; BETTY K. CHINN,
*Claimants*,

and

BYRON PICKLE,
*Claimant-Appellant*.

No. 12-16590

D.C. No.
2:09-cv-01937-G
EB-DAD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
November 19, 2014—San Francisco, California

Filed May 19, 2015

Before: Marsha S. Berzon and Johnnie B. Rawlinson, Circuit Judges, and Elaine E. Bucklo, Senior District Judge.[*]

Opinion by Judge Bucklo;
Dissent by Judge Rawlinson

## SUMMARY[**]

### Civil Forfeiture

The panel reversed the district court's judgment of default and final judgment of forfeiture of real property, and held that the district court erroneously viewed claimant's failure to respond to special interrogatories the government propounded pursuant to Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(6)(c)(i)(A) as a per se basis for striking his claim.

The panel held that the claimant's failure to answer the government's Rule G(6) interrogatories would not have warranted striking his claim as a discovery sanction without giving the claimant an opportunity to cure his lack of response. The panel also held that claimant's failure to

---

[*] The Honorable Elaine E. Bucklo, Senior District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

comply with Rule G(6) did not vitiate his statutory standing to contest the forfeiture and dismissal of his claim forthwith. The panel remanded for further proceedings.

Judge Rawlinson dissented because she believed the majority's interpretation of the rules applicable to forfeiture actions conflicted with the court's precedent and the decisions of most other courts that considered the issue, and she would hold that the district court acted within its discretion in striking claimant's claim.

## COUNSEL

Editte D. Lerman, Ukiah, California, for Claimant-Appellant.

Kevin C. Khasigian (argued), Assistant United States Attorney; Benjamin B. Wagner, United States Attorney, Eastern District of California, Sacramento, California, for Plaintiff-Appellee.

## OPINION

BUCKLO, Senior District Judge:

Byron Pickle ("Pickle") appeals the district court's June 15, 2012, default judgment and final judgment of forfeiture of real property located at 17 Coon Creek Road in Hawkins Bar, California (the "defendant property"). The judgment was entered after the court granted the government's motion to strike Pickle's claim and answer based on Pickle's failure to respond to special interrogatories the government propounded pursuant to Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule") G(6)(c)(i)(A), and then denied Pickle's motion to stay on the ground that without a claim, Pickle lacked standing to challenge the forfeiture action.

It is apparent from the district court's order that it viewed Pickle's failure to answer the Rule G(6) special interrogatories as a per se basis for striking his claim. Because that conclusion is incorrect as a matter of law, we reverse and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

On July 16, 2009, the United States initiated this *in rem* action seeking forfeiture of the defendant property. The forfeiture action was the result of criminal investigations by the California Bureau of Narcotic Enforcement (BNE) into suspected marijuana trafficking activities by claimant Byron Pickle, his son, James Pickle, and his brother, Thomas Pickle, all of whom were arrested after searches executed on the

defendant property (where Pickle resided), and the "Hennessy Road property" (where Thomas and James resided), revealed, *inter alia*, a large marijuana cultivation site, several hundred marijuana plants, bagged marijuana, packaging materials, firearms, and tens of thousands of dollars in cash. James and Thomas were charged with state drug offenses, but the District Attorney declined to file criminal charges against Pickle, and the BNE closed its investigation into Pickle's conduct on May 27, 2010.

The government's verified complaint for forfeiture states that Pickle is "[t]he recorded owner of the defendant real property." It further asserts that "Pickle occupies the main residence" located on the defendant property, and that one of Pickle's sons occupies a travel trailer also located on the property.

Pickle filed a verified claim in this proceeding on August 11, 2009, in which he likewise stated that he is the "recorded owner" of the defendant property. Pickle also filed an answer on September 4, 2009, in which he claimed "an innocent possessory and/or ownership interest" in the defendant property.[1]

On October 7, 2009, the parties stipulated, and the district court agreed, to a six month stay of the action based on the ongoing criminal investigation of Pickle and the ongoing prosecution of James and Thomas. The stay was extended, by court-approved stipulation, in May, August, and November of 2010. In all three of these stipulations, the parties observed that "it does not appear that any charges will

---

[1] A claim and answer was also filed by Leung and Betty Chinn, who held liens on the defendant property. Their claim is not at issue on appeal.

be filed against claimant Byron Pickle," but agreed that the stay was warranted in view of the ongoing prosecution of James and Thomas, whose anticipated invocation of the Fifth Amendment would interfere with the government's ability to gather relevant information. The November 2010 stay was set to expire on March 28, 2011, and the parties were directed to file a status report by March 14, 2011, "advising the Court whether a further stay is necessary."

The Joint Status Report the parties submitted pursuant to the November stay order did not request a further stay of the proceedings, but instead specified topics for discovery; proposed discovery deadlines; provided for motions and filing deadlines; and proposed a trial date. The district court issued a Pretrial Scheduling Order on March 23, 2011, setting February 16, 2012, as the discovery cutoff, April 16, 2012, as the deadline for hearing dispositive motions, and September 11, 2012, as the trial date.

On July 21, 2011, the United States served a Request for Admissions, General Interrogatories, Special Interrogatories, and a Request for Production of Documents. The special interrogatories specifically asked Pickle to:

> (1) State your full name for all names by which you are now known, or have been known in the past, including any and all aliases;
>
> (2) State every Social Security Number and driver's license number you have used with each name;
>
> (3) State the date and place of your birth;

(4) State your present residence address; and

(5) Identify and describe with particularity the nature of your interest in the defendant real property.

Pursuant to Rule G(6)(b), Pickle had twenty-one days, i.e., until August 15, 2011, to respond to the special interrogatories.

Pickle did not timely respond to the special interrogatories, but on August 17, 2011, the parties agreed to extend the deadline to September 19, 2011. Meanwhile, on August 2, 2011, Pickle moved to suppress the marijuana evidence obtained from the search of his property in 2008, and to dismiss the forfeiture proceedings pursuant to Rule G(8)(b)(i) and Fed. R. Civ. P. 12(b)(6), arguing that without the marijuana evidence, the United States could not state a claim for forfeiture. Then, on September 6, 2011, Pickle moved for a stay of the proceedings on the ground that "all of the discovery requests" the government served on July 21, 2011, sought information that implicated his Fifth Amendment protection against self-incrimination.

On October 11, 2011, the government filed both an opposition to Pickle's motion to stay and a motion to strike Pickle's claim. In both of these submissions, the government argued, *inter alia*, that Pickle's failure to respond to the Rule G(6) special interrogatories caused him to lack the "statutory standing" required to seek a stay of the proceedings or to contest the forfeiture of the defendant property.

On October 21, 2011, the district court issued a scheduling order resetting the dates on which the various

pending motions would be heard. The court concluded that the government's motion to strike must be resolved before either of Pickle's pending motions.

The court granted the government's motion to strike Pickle's claim on December 20, 2011. In the same order, the court denied Pickle's motion to stay, explaining that "absent a claim to the defendant property, Pickle no longer has standing to contest this forfeiture action." On June 15, 2012, the district court entered a judgment of default and final judgment of forfeiture. Petitioner timely appealed.

## STANDARD OF REVIEW

We review the district court's interpretation of the Supplemental Admiralty and Maritime Claims Rules de novo. *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1010 (9th Cir. 2013). While "[d]ismissal of a forfeiture claim for failure to comply with procedural requirements is reviewed for abuse of discretion, *id.* at 1011, a claimant's standing "is a threshold issue which we review de novo." *United States v. 22249 Dolorosa Street*, 167 F.3d 509, 511 (9th Cir. 1999).

## DISCUSSION

Pickle assigns three errors to the district court's final judgment. First, Pickle claims that the court abused its discretion by adjudicating the government's motion to strike before considering Pickle's first-filed motion to stay. Relatedly, Pickle asserts that the court abused its discretion when it held that Pickle lacked standing to challenge the forfeiture once his claim was stricken, reasoning that the ground on which the claim was stricken would not have

arisen had the action been stayed. Third, Pickle contends that the district court abused its discretion by failing to afford him the opportunity to cure his violation of Rule G(6) prior to striking his claim.

The challenged district court decisions all rested on one central error in the district court's analysis—its conclusion that it was compelled to strike Pickle's claim once it determined that he had failed to comply with Rule G(6). As we will explain, Pickle's failure to answer the G(6) interrogatories would not have warranted striking his claim as a discovery sanction without giving Pickle an opportunity to cure his lack of response. Nor did Pickle's failure to comply with Rule G(6) vitiate his statutory standing. For both of these reasons, the district court erred in striking Pickle's claim.

1. *The constitutional and procedural requirements of claims pursuant to CAFRA*

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, governs all *in rem* civil forfeiture proceedings commenced on or after August 23, 2000. *See United States v. Approximately $1.67 Million (U.S.) in Cash*, 513 F.3d 991, 998 (9th Cir. 2008). Section 983(a)(4)(A) of the statute provides:

> In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner

set forth in the Supplemental Rules for
Certain Admiralty and Maritime Claims . . . .

18 U.S.C. § 983(a)(4)(A).

Rule G(5) of the incorporated Supplemental Rules—
formerly Rule C(6)—enumerates the filing requirements for
a verified claim under CAFRA.  It mandates, *inter alia*, that
a claim: identify the specific property claimed; identify the
claimant and state the claimant's interest in the property; be
signed by the claimant under penalty of perjury; and be
served on the government attorney identified in the
government's notice of proceedings.  Rule G(5)(a).

Rule G(6), captioned "Special Interrogatories,"
establishes that "[t]he government may serve special
interrogatories limited to the claimant's identity and
relationship to the defendant property without the court's
leave at any time after the claim is filed and before discovery
is closed," and requires answers or objections to be served
within 21 days after the interrogatories are served.  We have
explained that the "purpose of [Rule G(6)] is 'to permit the
government to file limited interrogatories at any time after the
claim is filed to gather information that bears on the
claimant's standing.'"  *United States v. $133,420.00 in U.S.
Currency*, 672 F.3d 629, 635 (9th Cir. 2012) (quoting
Supplemental Rule G Advisory Committee Notes
(subdivision (6)).

Rule G(8)(c)(i) provides that the government may move
to strike a claim:

> (A) for failing to comply with Rule G(5) or
> (6), or

(B) because the claimant lacks standing.

Although Rule G(8) authorizes the government to bring a motion to strike on these bases, the Advisory Committee Notes to Rule G(8) caution courts that when a motion to strike is brought pursuant to Rule G(8)(c)(i)(A), "the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15. Not every failure to respond to subdivision (6) interrogatories warrants an order striking the claim." Accordingly, courts typically afford claimants one or even several opportunities to cure defective Rule G(6) responses, except where the circumstances indicate that it would be futile to do so or reflect persistent discovery abuses. *See, e.g.*, *United States v. Approximately $658,830.00 in U.S. Currency*, No. 2:11-cv-00967 MCE KJN PS, 2011 WL 5241311, at *3 (E.D. Cal. Oct. 31, 2011) (declining to strike claim for failure to comply with Rule G(6), quoting Advisory Committee Notes' guidance that "'[n]ot every failure to respond to subdivision (6) interrogatories warrants an order striking the claim,'" and therefore affording the claimant twenty-one days to respond to the special interrogatories); *United States v. $4,656,085.10 in Bank Funds*, No. SACV 12-0219-DOC, 2014 WL 5393858, at *4–*6 (C.D. Cal. Sept. 15, 2014) (striking claim only after claimant failed to heed an order compelling her to respond to the government's special interrogatories, failed to appear at a hearing on the government's motion for a default judgment, and failed to respond to an order to show cause as to why her claim should not be stricken); *United States v. Approximately $10,000 in U.S. Currency*, No 1:11-cv091845-SKO, 2013 WL 5314890, at *4–*5 (E.D. Cal. Sept. 20, 2013) (granting the government's unopposed motion to strike after concluding that claimant had abandoned the litigation generally, as he

had not only failed to respond to the government's special interrogatories, but had also ceased communicating with his attorney and had failed to take any steps to retain a new attorney or proceed *pro se*).

To pursue a claim, the claimant must demonstrate, in addition to the usual requirement of establishing Article III standing, *see Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013), compliance with "the jurisdictional procedural requirements" set forth in Supplemental Rule G(5). *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1126 (9th Cir. 2004). Many courts refer to the latter as "statutory standing" and have held that it is established through compliance with Rule G. *See id.*; *see also, e.g.*, *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 664 (3rd Cir. 2007) ("[t]o establish statutory standing in a forfeiture case, the claimant must comply with the procedural requirements set forth in Rule C(6)(a) [the predecessor to Rule G(5)] and § 983(a)(4)(A)).

This circuit and others have stated that standing to contest a forfeiture action can be conditioned on "strict compliance with filing requirements." *United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1316 (9th Cir. 1998) (citing *United States v. 1 Street A-1*, 978 F.2d 776, 778 (1st Cir. 1992); *see also United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1112–15 (5th Cir. 1992); *United States v. Eng*, 951 F.2d 461, 468 (2d Cir. 1991), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820 (1996). Nevertheless, the term "standing" is something of a misnomer, as "courts have 'discretion to overlook the failure to conform to the requirements of [forfeiture claim rules].'" *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1012 (9th Cir. 2013) (quoting *United States v. 2659 Roundhill*

*Dr.*, 194 F.3d 1020, 1024 (9th Cir. 1999)) (alteration in original); *see also United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1262 (2d Cir. 1989) (excusing technical noncompliance with procedural rules governing filing of claims on ground that claimant made sufficient showing of interest in property).

2.  *The government's motion to strike*

In this case, the government identified Rule G(8)(c)(A) as the basis for its motion to strike.  It then zeroed in on Pickle's failure to answer its Rule G(6) special interrogatories as the specific ground on which it based its entitlement to relief. The government's motion did not assert that Pickle had failed to comply with Rule G(5), nor did it claim that Pickle lacked Article III standing.  In fact, in its opposition to Pickle's motion to stay, the government stated affirmatively that it did not contest Pickle's constitutional standing, ("[a]t this time, the United States does not contest claimant's Article III standing").  Rather, the government argued that "Pickle's claim and answer should be stricken . . . for failure to comply with Supplemental Rule G(6)."  The government framed the issue in its motion to strike as Pickle's lack of statutory standing, arguing that "Rule G(6) responses are required to determine standing," and that "[s]tatutory standing is established through strict compliance with Supplemental Rules G(5) and G(6)."

3.  *The district court's order granting the government's motion to strike*

The district court began its three-page order by identifying the Rule authorizing the government's motion as Rule G(8)(c)(i)(A) and stating that "[t]he government argues

that Pickle's claim and answer should be stricken because Pickle has failed to respond to the government's Rule G(6) Special Interrogatories."     The court then quoted the government's recitation of the factual basis supporting its motion:

> [T]he United States' Rule G(6) special interrogatories were mailed to the claimant on July 21, 2011. The claimant's responses were due by August 15, 2011. The deadline was later extended to September 19, 2011. To date, the Government has not received the claimant's answers to the Supplemental Rule G special interrogatories and the twenty-one ('21') days in which a response is required has lapsed. (Mot. 4:1-7.)

The court acknowledged Pickle's argument that his motion for a stay effectively responded to the special interrogatories but reiterated its earlier determination that Pickle's stay motion could not be decided until the government's motion to strike was resolved.

The court went on to find that the "government's special interrogatory discovery probes Pickle's connection to the defendant property," and then quoted the provisions of Rule G(6), stating that, "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed but before discovery is closed," and that "[a]nswers or objections to these interrogatories must be served within 21 days after the interrogatories are served." (alterations in court order).  The court cited two district court cases from other jurisdictions in

which forfeiture claims were stricken based on the claimant's failure to comply with Rule G(6), and then concluded, "[s]ince Pickle's opposition is an ineffective response to the special interrogatories at issue, the government's motion to strike Pickle's claim and answer because of Pickle's failure to answer the subject special interrogatories is GRANTED."

### 4. *Application of the law to the facts of this case*

Although the district court did not expressly hold that Pickle's failure to comply with Rule G(6) eviscerated his statutory standing, its analysis suggests that it agreed with the government's argument that noncompliance with Rule G(6) amounts to a per se statutory standing defect, precluding the court from taking any action in the case. First, the only facts the court addressed in its order related to the dates on which the government served its special interrogatories and on which Pickle's responses were due. Additionally, the court struck Pickle's claim without further discussion after concluding that his motion to stay was "an ineffective response to the special interrogatories," citing two cases from other districts that had summarily stricken claims for failure to comply with Rule G(6). Finally, the court struck Pickle's claim without first ordering Pickle to provide adequate discovery responses or imposing some less severe, non-terminating sanction, as courts routinely do when confronted with discovery violations.

These factors signal that the court viewed the Rule G(6) deficiency as something more substantial than a discovery violation. Indeed, if the district court had concluded that striking Pickle's claim was warranted as a discovery sanction, without giving Pickle an opportunity to cure or reasoning why such opportunity would be futile, we would conclude

that decision was an abuse of discretion.  *See* Rule G(8) advisory committee's note ("[T]he court should strike a claim or answer [under Rule 8(c)(i)(A)] only if satisfied that an opportunity should not be afforded to cure the defects . . . ."); *see also United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding that the district court abused its discretion in striking a claim for sole reason that claimant failed adequately to respond to G(6) special interrogatories); *cf. Toth v. Trans World Airlines*, 862 F.2d 1381, 1385 (9th Cir. 1988).

Rather, the court appears to have concluded that because "[t]he government's special interrogatory discovery probes Pickle's connection to the defendant property," the court was constrained by standing principles to strike Pickle's claim forthwith once it determined that he had not strictly complied with Rule G(6).  That conclusion is at odds, however, with the both the text of Rule G(8) and the decisions of the several courts of appeals that have applied this provision in cases where, as here, the claimant's genuine ownership of the property was not legitimately in dispute.

First, the structure of Rule G(8)—which contains two distinct subparts, each authorizing specifically defined substantive bases on which the government may move to strike—counsels against the interpretation that a claimant's failure to abide by Rule G(6) necessarily constitutes a standing defect.  As noted above, Rule G(8)(c)(i)(B)—the subpart *not* invoked by the government in this case— explicitly authorizes motions to strike "because the claimant lacks standing."  By contrast, Rule G(8)(c)(i)(A)—the section the government asserts—authorizes such motions "for failing to comply with Rule G(5) or G(6)."  Construing a claimant's failure to comply with Rule G(5) or G(6) to require automatic

dismissal, as if it were a statutory standing defect, would appear to render subpart (B) of Rule G(8)(c)(i) redundant, violating a fundamental canon of construction. *Christensen v. Comm'r*, 523 F.3d 957, 961 (9th Cir. 2008) ("We should avoid an interpretation that would render the subsections redundant.").[2]

It is true, as noted above, that courts frequently refer to compliance with Rule G as a whole as a "statutory standing" requirement under CAFRA. Additionally, the Advisory Committee Note to Rule G(8)(c)(i)(A) emphasizes the "special role" of Rule G(6) "in determining claim standing," and courts including this one have held that the "purpose" of Rule G(6) special interrogatories is "to gather information that bears on the claimant's standing." *$133,420.00*, 672 F.3d at 635. While these statements undoubtedly fuel a perception that a claimant's compliance with Rule G(6) as a whole is a *sine qua non* to establish his statutory standing, we believe that the better view is the one expressed by our Seventh Circuit colleagues in *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 653 (7th Cir. 2013): Rule G(8)(c)'s "use of the term 'standing' is unfortunate because striking a claim is a decision on the merits. It is not a determination

---

[2] We respectfully disagree with the dissent's view that our decision "renders meaningless" the text of Rule G(8), which "unequivocally provides that the government may move to strike a claim due to the claimant's failure to comport with the requirements of Rule G(6)." *Dissent*, p. 35–36. Rule G(8) indeed authorizes the government to file a motion on this basis, but it does not compel the court to grant the motion upon finding non-compliance with Rule G(6). To the contrary, as the Advisory Committee Note to Rule G(8) makes explicit, "the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15. Not every failure to respond to subdivision (6) interrogatories warrants an order striking the claim."

that the claimant has failed to show that the court has jurisdiction and so he should seek relief by an alternative path; it is a determination that he has no interest in the property."

Other courts of appeals have similarly observed that the distinction between Article III standing and statutory standing is easily blurred, especially where, as here, the claimant asserts an "innocent owner" affirmative defense to forfeiture. For example, the Eighth Circuit has explained:

> To qualify as an innocent owner, each claimant must prove she has an ownership interest *as defined in the statute*. As relevant here, the statute defines the term "owner" to include "a person with an ownership interest in the specific property sought to be forfeited," and to exclude "a nominee who exercises no dominion or control over the property." 18 U.S.C. § 983(d)(6). Although many cases refer to this issue as part of the "standing" inquiry, it is in fact an element of the innocent owner's claim on the merits. When claimants have Article III standing but fail to prove an ownership interest that meets these statutory criteria, the "statement that Claimants lacked 'standing' is simply another way of stating that Claimants had failed to establish on the merits a property interest entitling them to relief."

*United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1014 (8th Cir. 2003) (quoting *United States v. Hooper*, 229 F.3d 818, 820 n. 4 (9th Cir. 2000)); *see also United States v.*

*One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft*, 619 F.3d 1275, 1277 n. 3 (11th Cir. 2010).

In this case, Pickle's affirmative defense alleges that Pickle "has an innocent possessory and/or ownership interest in" the defendant property. To avoid forfeiture on that basis, Pickle must ultimately establish the innocent nature of his interest in the defendant property, and his answers to the government's special interrogatories are presumably relevant to that issue. But because it cannot reasonably be disputed that Pickle's interest in the defendant property was sufficient to establish his *statutory* standing at the inception of the proceedings—recall that both parties alleged that Pickle was the "recorded owner" of the defendant property, and the government further alleged that Pickle and his son both resided on the property—Pickle's failure to respond to the government's special interrogatories did not alone vitiate his ability to maintain his claim. *See $133,420.00*, 672 F.3d at 638 (at motion to dismiss stage, "unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing.").

We thus agree with the conclusion drawn by other courts of appeals that where a claimant's Article III and statutory standing are not reasonably in dispute, his failure to respond to Rule G(6) special interrogatories does not, in itself, warrant striking his claim. In *United States v. $154,853.00 in U.S. Currency*, the Eighth Circuit reversed a lower court's order striking a claim for noncompliance with Rule G(6) where the claimant had adequately claimed to have earned the defendant funds through legitimate employment. 744 F.3d at 564, 562. The court reasoned that this allegation about the source of the funds was "sufficient to state a colorable 'ownership interest'" under CAFRA, and observed that the government

had in fact conceded the claimant's statutory standing to pursue his claim to those funds. *Id.* at 564 (quoting 18 U.S.C. § 983(d)(6)(A)). Accordingly, the court held that "no special interrogatories were necessary to determine standing," and that the district court had abused its discretion in striking the claim. *Id.* Similarly—and despite the fact that it does not share our view that an unequivocal assertion of ownership is sufficient, at the motion to dismiss stage, to establish statutory standing—the Fifth Circuit has held that, where the government had admitted facts sufficient to establish the claimant's interest in the defendant property, the claimant "need not have supplemented his claim with additional evidence" to establish his statutory standing. *$38,570*, 950 F.2d at 1113.[3]

Our dissenting colleague's view that our decision today conflicts with *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629 (9th Cir. 2012), appears to flow from her belief that there was a legitimate dispute over Pickle's genuine ownership of the defendant property. Recalling our observation in *$133,420* that standing is subject to "adversarial testing," the dissent faults us for "tak[ing] Pickle at his conclusory word." *Dissent*, pp. 36–37. But this criticism overlooks that Pickle's unequivocal assertion of ownership in his verified claim echoes the government's own verified allegations, which likewise assert Pickle's ownership

---

[3] Although the court concluded that the claimant had standing to challenge the forfeiture proceeding, it upheld the district court's decision to strike his claim and answer on the basis that they were untimely.

of the defendant property and additionally assert that Pickle resides on the property.[4]

The dissent's view that *$133,420* compels an outcome contrary to the one we reach is perplexing for additional reasons. First, the central issue in *$133,420* was the claimant's Article III standing; the government's motion to strike asserted Rule G(8)(c)(i)(B), and the district court explicitly noted that the claimant's procedural compliance was unchallenged. *U.S. v. 133, 420*, No. CV-09-8096-PCT-NVW, 2010 WL 2594304, at *4 (D. Ariz. June 23, 2010). Second, the standing issue was before the court on a motion for summary judgment. 672 F.3d at 637. Our analysis thus focused on whether the evidence of record was sufficient to sustain the claimant's burden to establish his Article III standing at that stage of the proceedings. *See id.* at 639. After concluding that the district court correctly discounted the evidentiary value of the claimant's verified claim because it ambiguously asserted "an ownership and/or a possessory interest in" the defendant property," *id*. at 636,[5] and that the

---

[4] Nor does our decision deprive the government of its entitlement to "adversarial testing" of Pickle's continued standing. *See dissent*, p. 37; *$133,420*, 672 F.3d at 642. The government could have moved to compel substantive answers to its special interrogatories, which the court could have granted notwithstanding Pickle's Fifth Amendment objection, as our discussion in *$133,420* suggests. *See id.* at 637, 643–44. Indeed, our decision in no way divests district courts of their authority to compel compliance with Rule G(6) or, indeed, to strike a claim pursuant to Rule G(8)(c)(i)(A) based on a claimant's persistent failure to do so.

[5] Specifically, although we held that the claimant's verified claim "constitutes evidence for purposes of opposing the government's motion for summary judgment," we concluded that its use of the "and/or" formulation made it insufficiently specific regarding the nature of the asserted interest to establish Article III standing. 672 F.3d at 640 (citation

court permissibly struck the claimant's interrogatory responses, which contained his only unambiguous assertion of ownership, *id.* at 640–41, we affirmed the court's conclusion that the remaining evidence of standing–the claimant's unexplained physical possession of the currency at the time of seizure–was insufficient to withstand the government's summary judgment challenge. *Id.* at 644. Nothing about that conclusion is at odds with our decision today.

*United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560 (D. Md. 2013), likewise is not contrary to our holding. In that case, the funds subject to forfeiture were recovered from the claimant's airplane carry-on bag, where they were discovered inside a suspiciously wrapped package to which a drug-detection dog alerted. *Id.* at 561–62. The claimant's verified claim "stated only that 'he[r] interest in the property herein is an ownership and possessory interest." *Id.* at 562 (alteration in original). She later amended her claim to add that "[t]his money . . . is proceeds of my personal investments in the entertainment industry, and proceeds from my mother's estate." *Id.* (omission in original). The court concluded that this assertion of her interest in the property did not comply with Rule G(5) and granted the government's motion to strike her claim on that basis. Although the government had not issued special interrogatories pursuant to Rule G(6), the court observed that "[i]n cases like this one, the Government needs to use the special interrogatories to test the Claimant's assertion that she

---

omitted). The dissent mistakenly states that Pickle's verified claim employs the same "and/or" formulation. *Dissent*, p. 37 and 42 n. 7. In fact, Pickle's verified claim states unambiguously, "Byron Pickle is the recorded owner of the defendant real property."

is the true owner of the defendant property and not merely a courier for a third party. But to do that, the Government must know what assertion of ownership the Claimant is making." *Id.* at 565.

The court's discussion in *$104,250.00* simply illustrates the unremarkable proposition that Rule G(6) interrogatories may be necessary to ascertain whether a claimant's interest is sufficient to establish his statutory standing to contest a forfeiture, particularly when the claim itself offers little explanation of the claimant's connection to the property. But neither *$104,250.00*, nor any other case we have reviewed, persuades us that in the circumstances of this case, Pickle's statutory standing was contingent on his compliance with Rule G(6).

Finally, we note that the government now argues, for the first time, that Pickle did not comply with Rule G(5), and that his "bare assertion of ownership" was inadequate to establish his statutory standing. Even assuming that these arguments accurately reflect the law of this circuit, as opposed to that of the Fifth Circuit, from which defendant's only citation emanates, *see $38,570 U.S. Currency*, 950 F.2d at 1111, and with which at least one other circuit has expressly disagreed, *see United States v. $196,969.00 U.S. Currency*, 719 F.3d 644, 645–46 (7th Cir. 2013) (a "bald assertion" of ownership strictly complies with Rule G(5)), the government has given us no reason to deviate from our general practice of declining to consider arguments raised for the first time on appeal. *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990).

## CONCLUSION

Because the district court's decision to strike Pickle's claim was based on the legally erroneous belief that Pickle's failure to comply with Rule G(6) vitiated his statutory standing to contest the forfeiture and required dismissal of his claim forthwith, and because Pickle's failure to answer the G(6) interrogatories would not have warranted striking his claim as a discovery sanction without giving him an opportunity to cure his lack of response, we **REVERSE** the judgment of default and final judgment of forfeiture and **REMAND** for further proceedings consistent with this opinion.

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. The majority's misinterpretation of the rules applicable to forfeiture actions conflicts with our precedent and the decisions of nearly every other court to consider the issue we decide.

The rules governing civil forfeiture actions operate in a unique manner in discerning a claimant's standing. In particular, the rules establish a special role for discovery in determining whether a claimant has standing to challenge a forfeiture action. At issue in this case is the application of Rule G of the Supplemental Rules of the Federal Rules of Civil Procedure for Admiralty or Maritime Claims and Asset Forfeiture Actions (Rule G).

Rule G(8)(c)(i) provides:

(i) At any time before trial, the government may move to strike a claim or answer: (A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing.

Rule G(8)(c)(i) is not complex in its application. It expressly provides that "[a]t any time before trial," the government may file a motion to strike a claim because the claimant failed to comply with Rule G(5) or (6) or because the claimant otherwise "lacks standing." *Id.* Rule G(6) is equally straightforward regarding the government's utilization of special interrogatories in determining the claimant's standing:

> The government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed. But if the claimant serves a motion to dismiss the action, the government must serve the interrogatories within 21 days after the motion is served.

Rule G(6)(a). It is readily apparent from the language of Rule G(6)(a) concerning the scope of the special interrogatories that the claimant's standing is implicated in any responses. It is for that very reason that the special interrogatories are "limited to the claimant's identity and relationship to the defendant property. . ." *Id.* Consistent with the near unanimous interpretation of Rule G(6)(a), we have articulated that:

Unlike in typical civil proceedings, the government may commence limited discovery immediately after a verified claim is filed. Supplemental Rule G(6)(a) provides that the government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed. *The purpose of the rule is to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing. . . .*

*United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 635 (9th Cir. 2012) (citation, alteration, footnote reference, and internal quotation marks omitted) (emphasis added). "At any time before trial, the government may move to strike the claimant's claim or answer on the basis that the claim or answer does not comply with Supplemental Rule G(5), *that the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a)*, or that the claimant lacks standing. . . ." *Id.* (citation and footnote reference omitted) (emphasis added).

"The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant's identity and relationship to the defendant property and to gather information that bears on the claimant's standing[.]" *Id.* at 642 (citations and internal quotation marks omitted). Indeed, "the text of Rule G(6)(a) itself . . . broadly allows the government to collect information regarding the

claimant's relationship to the defendant property. . . ." *Id.* (internal quotation marks omitted). Despite such clarity, the majority strays from our precedent and that of nearly every other court in holding that the district court erred in striking Pickle's claim because he failed to answer the special interrogatories relevant to his standing.

Although this appeal is governed by an abuse of discretion standard of review,[1] *see United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 562 (8th Cir. 2014), the majority curiously faults the district court for applying the express language of Rules G(6) and G(8) in accordance with existing precedent. "A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment. . . ." *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 879 (9th Cir. 2014) (citation, alteration, and internal quotation marks omitted). The district court committed none of these infractions.

It is telling that the majority recognizes that:

the Advisory Committee Note to Rule G(8)(c)(i)(A) emphasizes the special role of

---

[1] If we were independently reviewing whether Pickle had standing to challenge the forfeiture action, our review would be *de novo*. *See United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008). However, in this appeal, we review the district court's grant of the motion to strike Pickle's claim for an abuse of discretion. *See $133,420.00*, 672 F.3d at 637. In any event, based on the weight of authority establishing that Rule G(6)(a) relates to standing and that a claim may be stricken based on the claimant's failure to comport with the rule's requirements, the outcome would be the same under *de novo* review.

Rule G(6) in determining claim standing, and courts including this one have held that the purpose of Rule G(6) special interrogatories is to gather information that bears on the claimant's standing.

*Majority Opinion*, p. 17 (internal quotation marks omitted). The majority also candidly acknowledges that "courts frequently refer to compliance with Rule G as a statutory standing requirement under CAFRA" and that the statements in the advisory committee note and court cases "undoubtedly fuel a perception that a claimant's Rule G(6) compliance is a *sine qua non* to establish his standing . . ." *Id.* Once the majority recognized that the district court's decision comported with Rule G, its Advisory Committee Note,[2] our precedent, and the precedent of other courts, an affirmance of the district court's decision should have followed. The majority nevertheless concludes that the district court erred in striking Pickle's claim because his failure to respond to the special interrogatories as required by Rule G(6) was ostensibly irrelevant to Pickle's standing. *See id.* at 16.

---

[2] The Advisory Committee Note for Rule G(6) provides:

It remains useful . . . to permit the government to file limited interrogatories at any time after a claim is filed to gather information that bears on the claimant's standing. Subdivisions (8)(b) and (c) allow a claimant to move to dismiss only if the claimant has standing, and recognize the government's right to move to dismiss a claim for lack of standing. Subdivision (6) interrogatories are integrated with these provisions in that the interrogatories are limited to the claimant's identity and relationship to the defendant property. . . .

Supp. R. G advisory committee note (subdivision (6)).

I disagree. I would hold that the district court acted within its discretion in striking Pickle's claim on a basis that is unquestionably recognized by our precedent, numerous rulings from other courts, the language of Rule G, and the Advisory Committee Note. *See $133,420.00*, 672 F.3d at 642 ("The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant's identity and relationship to the defendant property and to gather information that bears on the claimant's standing[.]") (citations and internal quotation marks omitted); *see also $154,853.00*, 744 F.3d at 563 (observing that the purpose of Rule G(6)(a) "is to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing") (citing *$133,420*) (internal quotation marks omitted); *United States v. $25,982.28 in U.S. Currency*, No. 5:14 CV 150, 2015 WL 410590, at *2 (N.D. Ohio Jan. 29, 2015) ("While it is claimant's burden to establish standing, Rule G(6) entitles the government to serve special interrogatories to determine whether the claimant has a sufficient interest in the seized property to contest the forfeiture, that is, whether the claimant has standing. . . .") (citations and footnote reference omitted); *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F.Supp.2d 816, 822 (E.D. Mich. 2010) (noting that "[s]tatutory standing is established through *strict* compliance with Supplemental Rules G(5) and G(6)") (citation omitted) (emphasis added); *United States v. $104,250.00 in U.S. Currency*, 947 F.Supp.2d 560, 565 (D. Md. 2013) ("To facilitate the Government's ability to challenge claims on standing grounds, Rule G(6) permits the Government to serve the Claimant with special interrogatories that focus on the Claimant's identity and her interest in the defendant property. Indeed, the importance of the standing issue and of the role of

the special interrogatories is underscored by Rules G(6)(c) and G(8)(c)(ii)(A) which provide that the claimant must respond to the special interrogatories, and [the] court must determine whether the claimant has standing to contest the forfeiture, before [the] court addresses any other issue that the claimant may raise.") (citations and internal quotation marks omitted); *United States v. Eleven (11) New Utility Vehicles*, No. 13-1776(GAG), 2014 WL 4385734, at \*2 (D. P. R. Sept. 4, 2014) ("To establish statutory standing to contest a forfeiture action, a claimant must file a claim that complies with Supplemental Rules G(5) and G(6). A court may strike the claim of any claimant who fails to follow the Supplemental Rules' procedural dictates.") (citations omitted); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 664 F.Supp.2d 97, 101 (D.D.C. 2009) ("Because the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently, a court is authorized to strike the claim and/or answer of any claimant who fails to follow the Rules' procedural dictates. Courts generally expect claimants to adhere *strictly* to those requirements. . . .") (citations omitted) (emphasis added). The majority's unsupported deviation from this overwhelming weight of authority transforms the straightforward application of an unambiguous rule into an immeasurably confusing venture.

The majority cites not a single persuasive decision reversing a district court's striking of a cl`aim based on the claimant's obdurate refusal to comply with Rule G(6). Rather, the majority relies on the Seventh Circuit's approach in *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 653 (7th Cir. 2013). *See Majority Opinion*, p. 17. However, the Seventh Circuit's decision is not helpful,

because the court never considered the role of Rule G(6) in striking a forfeiture claim.

In *$574,840*, the claimants sought a stay of the forfeiture proceedings based on their ongoing criminal proceedings. *See* 719 F.3d at 650. After denying the motion to stay, the district court ordered the claimants to respond to the government's special interrogatories, including an interrogatory asking the claimants "to state the sources of the cash they claimed to own . . ." *Id.* The district court granted the government's motion to strike and held that it lacked Article III jurisdiction because the claimants refused to respond to the interrogatories. *See id.* The Seventh Circuit determined that the district court erred because "[a]t the pleading stage Article III standing is something to be alleged, not proved," and the Rule G(5)[3] requirement was in addition to the pleading necessary to establish Article III standing. *Id.* at 651. The Seventh Circuit concluded that "[t]he government jumped the gun. It gave no reason for opposing a stay that would defer the litigation of its forfeiture case until the criminal prosecution of the claimants was resolved. . . ." *Id.* at 653–54. In this context, the Seventh Circuit observed that Rule G(8)'s "use of the term standing is unfortunate because striking a claim is a decision on the merits. It is not

---

[3] Pursuant to Rule G(5):

> A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must: (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney . . .

a determination that the claimant has failed to show that the court has jurisdiction and so he should seek relief by an alternative path; it is a determination that he has no interest in . . . .property. . . ." *Id.* at 653 (internal quotation marks omitted). Thus, the Seventh Circuit never espoused any rule applicable to this appeal. Rather, the Seventh Circuit was applying Rule G(8)(c)(i)(B), which "provides an escape hatch for the government by allowing it to respond to the claim with a motion to strike" because the claimant lacks standing. *Id.*; *see also* Rule G(8)(c)(i)(B).[4] The Seventh Circuit did not consider a motion to strike premised on Rule G(8)(c)(i)(A) – the provision at issue in this appeal – based on a claimant's failure to comply with Rule G(6).[5]

Notably, in the companion case to *$574,840*, the Seventh Circuit emphasized that the government could rely on the claimant's failure to comply with Rule G(6) in seeking dismissal of a forfeiture claim. *See United States v. $196,969.00 U.S. Currency*, 719 F.3d 644, 647 (7th Cir. 2013). The government sought to strike a forfeiture claim because the claimant failed to "spell out his interest in the property at the outset . . ." *Id.* In rejecting this assertion, the Seventh Circuit opined:

---

[4] Significantly, Rule G(8)(c)(i)(A) does not use the term "standing" and the Seventh Circuit never rejected longstanding precedent holding that compliance with Rule G(6) is necessary to establish statutory standing. Interpreting the court's silence on this point as negating the need to adhere to the requirements of Rule G(6) is unprecedented.

[5] As the majority acknowledges, "[t]he government's motion did not assert that Pickle had failed to comply with Rule G(5), nor did it claim that Pickle lacked Article III standing. . . ." *Majority Opinion*, p. 13.

> [W]e are given no grounds for thinking that a claimant's failure to particularize the nature of his claimed interest beyond what Rule G(5) requires burdens the government or the courts unduly. *The government can depose the claimant or serve an interrogatory on him without leave of court, as expressly authorized by Rule G(6)(a). If the claimant is unresponsive, the government can move for dismissal of the claim and for entry of a judgment of forfeiture. . . .*

*Id.* (emphasis added). Indeed, the Seventh Circuit's rationale is in lockstep with our precedent. *See $133,420*, 672 F.3d at 635 ("At any time before trial, the government may move to strike the claimant's claim or answer on the grounds that . . . the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a) . . .").

The Eighth Circuit's decision in *$154,853.00* is equally unhelpful to the majority. In that case, the claimant filed an amended verified claim in which he asserted that $4,500 in seized money was earned though his employment. *See* 744 F.3d at 562. During oral argument, the government conceded that the claimant had statutory standing with respect to the claimed funds. *See id.* at 564. The Eighth Circuit concluded that the district court abused its discretion in striking the claim because "[i]f [the claimant] had already established standing as to the $4,500, as the government concedes, then special interrogatories were unnecessary to determine his standing as to that currency. . . ." *Id.* Thus, the district court abused its discretion in striking a claim for failure to answer special interrogatories that were wholly unnecessary. In this case, far from conceding standing, the

government explicitly and emphatically argued that Pickle did not satisfy the requirements for statutory standing, emphasizing that Pickle's "out-right refusals to respond to Rule G(6) special interrogatories frustrate any examination into whether he is a straw owner, nominee, or received the property via a fraudulent transfer." Clearly, the Eighth Circuit's decision addressed markedly different facts.

The majority's equating of Pickle's refusal to answer the special interrogatories to a discovery issue is discordant. *See Majority Opinion*, p. 15 (criticizing the district court for "view[ing] the Rule G(6) deficiency as something more substantial than a discovery issue. . . ."). However, the district court is in good company. A panel of this court has also characterized the interrogatory process in forfeiture proceedings as "unlike . . . typical civil proceedings." *$133,420*, 672 F.3d at 635. Rather than raising a run-of-the-mill discovery issue, a claimant's adherence to Rule G(6)(a) goes to the heart of the claimant's assertion that he has standing to challenge the forfeiture action. *See id.* ("The purpose of the rule is to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing. . . .") (citation and internal quotation marks omitted); *see also id.* at 642 ("The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant's identity and relationship to the defendant property and to gather information that bears on the claimant's standing[.]") (citations and internal quotation marks omitted); *$574,840*, 719 F.3d at 650 (stating that "[t]he purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims"); *$196,969.00*, 719 F.3d at 647 ("The government can depose the claimant or

serve an interrogatory on him without leave of court, as expressly authorized by Rule G(6)(a). If the claimant is unresponsive, the government can move for dismissal of the claim and for entry of a judgment of forfeiture. . . .").

The majority reasons that "the structure of Rule G(8) – which contains two distinct subparts, each authorizing specifically defined substantive bases on which the government may move to strike – counsels against the interpretation that a claimant's failure to abide by Rule G(6) necessarily amounts to a standing defect. . . ." *Majority Opinion*, p. 16. However, this reading of Rule G(8) directly conflicts with our precedent and with a plain reading of the rule. Rule G(8)(c) provides that:

> (i) At any time before trial, the government may move to strike a claim or answer: (A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing.

These subparts are not substantively distinct. Rather, the subparts relate to potential defects in the claimant's standing that may arise during different phases of the forfeiture action. Although a claimant, unlike Pickle, may have fully answered the special interrogatories pursuant to Rule G(6), the claimant may nonetheless lack standing at some "time before trial," such as during the summary judgment stage. *See id.*; *see also $133,420.00*, 672 F.3d at 638 (concluding that "a claimant's bare assertion of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary judgment").

In any event, Rule G(8) unequivocally provides that the government may move to strike a claim due to the claimant's

failure to comport with the requirements of Rule G(6).  *See* Rule G(8)(c)(i)(A).  By holding that Pickle could continue to contest the forfeiture despite his non-compliance with the mandates contained in Rule G(6), the majority renders meaningless this clearly bestowed option to move to strike a claim.  *See Majority Opinion*, p. 20–21; *cf. $133,420.00*, 672 F.3d at 635 ("At any time before trial, the government may move to strike the claimant's claim or answer on the grounds that the claim or answer does not comply with Supplemental Rule G(5), *that the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a)*, or that the claimant lacks standing. . . .") (citation and footnote reference omitted) (emphasis added). Although the majority appears nonplussed by use of the term "standing" in Rule G(8)(c)(i)(B), we have nonetheless articulated that "the purpose of [Rule G(6)(a)] is to permit the government to file limited interrogatories at any time after the claim is filed to gather information *that bears on the claimant's standing*. . . ." *$133,420.00* at 635 (citation and internal quotation marks omitted) (emphasis added). "The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant's identity and relationship to the defendant property and to gather information that bears on the claimant's standing[.]" *Id.* at 642 (citations and internal quotation marks omitted). The majority's relegation of Rule G(6)(a) to a mere discovery request unrelated to the claimant's standing directly conflicts with our precedent and creates an unwarranted split with every court that has recognized the relevance of the rule to the determination of a claimant's standing, and the government's right to use the rule to subject a claim to adversarial testing.

The majority also maintains that the district court erred because "the claimant's genuine ownership of the property was not legitimately in dispute. . . ." *Majority Opinion*, p. 16. It is unclear how the majority reaches such a conclusion given Pickle's refusal to respond to the special interrogatories, including the most basic questions concerning his relationship to the property, and the government's continuing challenge to his status. Pickle's bare assertion in his verified claim that he "has an innocent possessory and/or ownership in [the] property" is not dispositive. Rather, the entire point of the Rule G(6) special interrogatories is to probe the claimant's property interest as asserted in his claim. *See $574,840*, 719 F.3d at 653–54 (observing that "[i]t's all too easy for someone who has no colorable claim to property in government hands to file a claim in the forfeiture proceeding. . . . Rule G provides an escape hatch for the government by allowing it to respond to the claim with a motion to strike . . ."). After all, there would be no point in providing for special interrogatories if the claimant could simply assert that he is a record owner in lieu of complying with Rule G(6). *See $133,420.00*, 672 F.3d at 642 ("The issue of standing is subject to *adversarial testing* under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant's identity and relationship to the defendant property, and to gather information that bears on the claimant's standing[.]") (citations and internal quotation marks omitted) (emphasis added). The majority deprives the government of the adversarial testing to which it is entitled and simply takes Pickle at his conclusory word.

Tellingly, forfeiture claims framed in terms of "and/or" property interests have met with skepticism in our circuit. For instance, in *$133,420.00*, we cautioned that:

> Although [the claimant's] verified claim was admissible evidence, its statement that [the claimant] had an ownership and/or a possessory interest in the defendant property is not sufficient to establish his standing. As we have explained, the claimant must make clear whether he is asserting a possessory interest, an ownership interest, or something else. Because [his] claim used and/or, it was not sufficiently specific regarding the nature of [his] claimed interest in the property. More important, the term and/or left open the possibility that [the claimant] was claiming only a possessory interest . . . and an unexplained possessory interest is insufficient to establish standing at any stage of a forfeiture proceeding. . . .

672 F.3d at 640 (citations and internal quotation marks omitted). The majority, therefore, assumes too much when it concludes that there was no legitimate dispute concerning Pickle's "genuine ownership of the property" despite Pickle's refusal to answer the special interrogatories. *Majority Opinion*, p. 16.[6]

---

[6] The majority's approach appears to intermingle the requirements for Article III standing and those of statutory standing in forfeiture actions. *See, e.g.*, *Majority Opinion*, pp. 17–18. "In order to meet the case-or-controversy requirement of Article III, a plaintiff (including a civil forfeiture claimant) must establish the three elements of standing, namely, that the plaintiff suffered an injury in fact, that there is a causal connection between the injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision." *$133,420.00*, 672 F.3d at 637 (citations omitted). "Claimants in civil forfeiture actions can satisfy this test by showing that they have a colorable interest in the property,

Additionally, the majority's conclusion that special interrogatories were unnecessary because Pickle's bare assertion that he was a record owner automatically conferred standing is unsubstantiated. *See Majority Opinion*, pp.17–18 In his motion for stay, Pickle asserted that he was "[t]he recorded owner" of the property. The government nonetheless sought special interrogatories to determine if Pickle was "a straw owner, nominee, or received the property via a fraudulent transfer. . . ." The government's efforts to discern Pickle's precise property interest were entirely warranted. "Possession of mere legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture." *United States v. Vacant Land*, 15 F.3d 128, 130 (9th Cir. 1994), *as amended* (citations and alteration omitted). Such forfeiture cases may "turn on a finding that the title holder is a strawman holding nominal title as a subterfuge for a drug trafficker, rather than being a true owner of an interest in the property. . . ." *Id.* Under the majority's approach, Rule G(6)(a) becomes meaningless as long as a claimant refuses to

---

which includes an ownership interest or a possessory interest[.]" *Id.* (citations and internal quotation marks omitted). "At the motion to dismiss stage, a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing." *Id.* at 638 (citations omitted) (emphasis added). "If the claimant instead asserts a possessory interest at the motion to dismiss stage, the claimant must offer some factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property. . . ." *Id.* (citation and internal quotation marks omitted). In contrast, a claimant's statutory standing is independently subject to the claimant's compliance with Rule G(6). *See id.* at 634; *see also Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d at 822 (observing that "[s]tatutory standing is established through strict compliance with Supplemental Rules G(5) and G(6)") (citation omitted).

answer the special interrogatories and summarily declares that he is a record owner. Affording a claimant such an unwarranted escape from the strictures of Rule G(6)(a) is contrary to the rule's purpose of permitting the government to test a claimant's assertion of a property interest through special interrogatories. *See $133,420.00*, 672 F.3d at 634, 642.

Contrary to the majority's approach, we have emphasized the importance of compliance with Rule G(6) even in cases where the claimant has asserted his Fifth Amendment rights. In *$133,420.00*, we observed that the claimant's assertion of his Fifth Amendment privilege against self-incrimination was an attempt to thwart the adversarial testing contemplated by Rule G(6)(a). We concluded that the claimant's reliance on the Fifth Amendment to avoid answering the special interrogatories "frustrat[ed] the government's attempts to test the veracity of his claim of ownership" and that "his claim of privilege . . . raises the core concern that his testimony may furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition." 672 F.3d at 642.

The majority's approach, therefore, is in clear conflict with our precedent establishing that Rule G(6)(a) implicates the claimant's standing and the government has a right to file a motion to strike a claim when the claimant does not respond to the special interrogatories. *See id.* ("The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the claimant's identity and relationship to the defendant property, and to gather information that bears on the claimant's standing[.]") (citations and internal quotation marks omitted); *see also id.* at 635 ("At any time

before trial, the government may move to strike the claimant's claim or answer on the grounds that the claim or answer does not comply with Supplemental Rule G(5), *that the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a*), or that the claimant . . . .standing. . . .") (citation and footnote reference omitted) (emphasis added).

Relying on *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011 (8th Cir. 2003) and *United States v. One 1900 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft*, 619 F.3d 1275, 1277 n.3 (11th Cir. 2010), the majority attempts to justify its deviation from our binding precedent by suggesting that standing and the merits of the forfeiture action are blurred when the claimant asserts an innocent owner defense. *See Majority Opinion*, pp. 17–18. "An innocent owner is an owner who (i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property. . . ." *United States v. Ferro*, 681 F.3d 1105, 1113 (9th Cir. 2012) (citation and internal quotation marks omitted). The majority's innocent owner suggestion is immeasurably confusing given that Pickle asserted that a stay was warranted due to pending accusations of "possessing marijuana for sale, cultivation of marijuana, and other violations of [California law] pertaining to marijuana." Pickle also affirmed that he was "subject to a parallel criminal investigation" and that he declined to respond to the

government's interrogatories based on his Fifth Amendment rights.[7]

In any event, *One Lincoln Navigator 1998* and *One 1900 Beechcraft* did not involve the claimant's lack of statutory standing premised on the claimant's failure to comply with Rule G(6)(a). Rather, those cases involved an assertion of an innocent owner defense pursuant to 18 U.S.C. § 983(d)(1)[8] and have no relevance to this appeal involving Pickle's refusal to provide any support for his asserted property interest in response to the government's special interrogatories. *See One Lincoln Navigator 1998*, 328 F.3d at 1014; *see also One 1990 Beechcraft*, 619 F.3d at 1277 n.3 (clarifying that "[a]lthough many cases refer to the statutory definition of ownership as part of the standing inquiry, it is in fact an element of the innocent owner's claim on the merits") (citation, alteration, and internal quotation marks omitted). In contrast to Pickle's blanket refusal to comply with Rule G(6) and provide support for his assertion of a property interest, the claimants in *One Lincoln Navigator 1998* and *One 1990 Beechcraft* provided evidence during evidentiary hearings in support of their claims. *See One Lincoln Navigator 1998*, 328 F.3d at 1012–13; *One 1990 Beechcraft*, 619 F.3d at 1276–77. The majority's parsing of inapposite innocent owner cases does not support reversal of the district

---

[7] In his verified claim, Pickle maintained that he had "an innocent possessory and/or ownership in [the] property." In his motion for a stay, he asserted only that he was "[t]he recorded owner" of the property.

[8] Pursuant to 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence."

court's striking of Pickle's claim, particularly in light of our contrary precedent. *See $133,420.00*, 672 F.3d at 634, 642.

Based on its assertion that courts "typically" afford claimants an opportunity "to cure defective Rule G(6) responses," the majority faults the district court for not providing Pickle a similar opportunity. *Majority Opinion*, pp. 11–12. However, the record belies any credible claim that an opportunity to cure was appropriate. This action did not involve a claimant's defective responses to the special interrogatories, but a complete refusal to abide by Rule G(6). In this protracted action, which commenced in 2009, the district court granted numerous stays based on pending criminal proceedings against Pickle's relatives. Once it became apparent that Pickle was not the subject of any criminal prosecution,[9] the district court ordered that discovery be completed by February 16, 2012, and the parties proposed a September 10, 2012, trial date. Although it was evident that Pickle was not subject to any criminal proceedings, Pickle nevertheless refused to answer the special interrogatories and responded with another motion to stay based on a purported criminal prosecution that never materialized.[10] Pickle refused to respond to any of the government's interrogatories, requests for admission, or requests for production, informed

---

[9] Pickle was unable to demonstrate that he was "the subject of a related criminal investigation or case" or that his Fifth Amendment rights were implicated, because the criminal investigation into his activities had been closed. 18 U.S.C. § 981(g)(2)(A)&(C).

[10] Pickle's motion to stay filed in 2011 was premised on a 2008 police report stating that a case against Pickle would be forwarded to the Trinity County District Attorney's Office. However, that report also confirmed that "[n]o charges were filed against Byron Pickle and the case against him was closed on August 14, 2009."

the government that he was asserting his Fifth Amendment rights, refused to attend his scheduled deposition, and filed an untimely opposition to the government's motion to strike. Pickle's refusal to respond to the special interrogatories based on his specious assertion of an ongoing criminal investigation is entirely distinguishable from the cases cited by the majority. Considering Pickle's conduct, the district court was not compelled to afford Pickle any additional opportunities to satisfy his obligations under Rule G(6).

The majority's holding that the district court erred in striking Pickle's claim because Pickle's failure to comply with Rule G(6) did not implicate his standing is legally untenable and conflicts with our precedent, as well as that of nearly every other court considering Rule G(6). The district court did not abuse its discretion in striking Pickle's claim because he refused to respond to the government's special interrogatories as required by Rule G(6). Once Pickle's claim was stricken, Pickle no longer possessed any standing to contest the forfeiture. *See* 18 U.S.C. § 981(g)(2)(B) (providing that, for a stay, the claimant must have "standing to assert a claim in the civil forfeiture proceeding"). Thus, the district court's denial of Pickle's motion to stay due to lack of standing was entirely proper. I respectfully dissent from the majority's contrary holding.